IN RE APPLICATION OF VLADIMIR SHIPKA AND
OTHERS FOR CERTIFICATE AUTHORIZING
COMMUNITY STATE BANK OF GRAND
RAPIDS TO TRANSACT BUSINESS.
FIRST NATIONAL BANK OF GRAND RAPIDS AND
ANOTHER v. DEPARTMENT OF COMMERCE.

217 N. W. 2d 511.

February 1, 1974—Nos. 44002, 44038.

*John P. Weber,* for relator First National Bank of Grand
Rapids.

*Thompson, Hessian, Fletcher, McKasy & Soderberg* and *Harold J. Soderberg,* for relator Grand Rapids State Bank.

*Dorsey, Marquart, Windhorst, West & Halladay* and *Emery W. Bartle,* for respondent applicants.

*Warren Spannaus,* Attorney General, *Curtis D. Forslund,* Solicitor General, and *Steven Gunn,* Special Assistant Attorney General, for respondent Department of Commerce.

Heard before Knutson, C. J., and Otis, Peterson, Todd, and MacLaughlin, JJ., and considered en banc.

PER CURIAM.

Writs of certiorari to review a decision of the Department of Commerce of the State of Minnesota granting an application for

establishment of a bank at Grand Rapids, Minnesota.[1] Relators each allege that the application is defective on its face because it failed to disclose ownership in the applicants of more than 50 percent of the proposed stock; because the applicants violated the securities law of this state; and because the applicants failed to sustain the burden of proof required by statute and by our previous decisions. We affirm the decision of the commerce commission.

Applicants filed their application for issuance of a bank charter in Grand Rapids, Minnesota, pursuant to the provisions of Minn. St. c. 45. The application on its face disclosed that the applicants intended to purchase 12 percent of the outstanding bank stock and intended to sell the remaining 88 percent to individuals within the immediate trade territory of the bank. An amendment to the original application, as well as testimony at the hearing, disclosed that four additional, proposed directors would also buy stock and, hence, the applicants and the proposed directors would own 24.5 percent of the outstanding stock.

Relators contend that unless the charter application discloses ownership of 50 percent or more of the stock of the proposed bank, the application must be denied. Relators cite no case law

---

[1] Applicants contend that this court has no jurisdiction, since pursuant to Minn. St. 45.07 a writ of certiorari shall issue only in those cases where an application is denied. Minn. St. 45.07 reads in pertinent part: "* * * In case of the *denial* of the application, the department of commerce shall specify the grounds for the *denial* and the supreme court, upon petition of any person aggrieved, may review by certiorari any such order or determination of the department of commerce." (Italics supplied.)

We have previously considered this question in In re Application of Gustafson, 270 Minn. 348, 350, 133 N. W. 2d 843, 845 (1965), where we said: "We shall follow the precedent of the Duluth Clearing House case [245 Minn. 529, 73 N. W. 2d 790] and consider this case on the merits. The absence in Minn. St. c. 45 of provision for review of an order granting an application appears to us to be a legislative oversight. A legislative clarification would be most helpful."

or regulations of the Department of Commerce in support of their contention. Applicants, however, infer from the language of § 48.03, subd. 4, that the legislature contemplates that state banks may be formed where no individual or group of individuals will have control of the voting stock. That statute provides in part:

"Whenever a change occurs in the outstanding voting stock of any state bank which will *result in control* or in a change in the control of the bank, * * *." (Italics supplied.)

We are not persuaded that this statute resolves the question of legislative intent. However, while the Department of Commerce under the governing statutes and the department's rule-making power has authority to adequately regulate and supervise the management of a bank in the State of Minnesota, neither our statute nor the regulations of the department contain a requirement that applicants for a bank charter must show that they will own more than 50 percent of the proposed stock of a new bank.

At commencement of the hearing on the application, relators argued that the proceedings should be terminated because offers to sell stock made by the applicants prior to issuance of a charter violated this state's securities registration law and, thus, the applicants participated in unlawful acts which would preclude them from being issued a bank charter. Such a position is untenable.

The Department of Commerce rejected this contention, finding that applicants had merely sent a letter to the general public "regarding possible ownership in a proposed bank." The letter itself, with which applicants included a "Statement of Intent to Subscribe for Stock," made it clear that persons signing the statement of intent could purchase stock only "if and when the bank application is granted and stock shares are actually sold," and that there was "absolutely nothing binding upon [such persons] in signing such a statement." We agree with the depart-

ment that these communications were not offers to sell securities within the purview of the statute.[2]

The registration of securities and the granting of charters for state banks are both regulated by the Department of Commerce, whose administration is vested in the commissioner of securities, commissioner of banks, and commissioner of insurance. Since both securities and state bank charters are regulated by the same state agency, it is appropriate that the need for registration of securities be determined in hearings before the Department of Commerce, as was done here. That department has adopted no regulations nor sought any legislative changes in regard to this exemption. It is not the function of the court to do so.

We hold that the solicitation of stock subscriptions for a proposed bank, conditional upon the issuance of a charter, is outside the scope of the securities registration laws of the State of Minnesota and the regulations of the Department of Commerce.

Finally, relators claim that the evidence offered by the applicants does not meet the requirements of Minn. St. 45.07 and does not establish a "reasonable public demand" upon consideration of the factors outlined by this court in our decision in In re Application of Jackson, 277 Minn. 293, 152 N. W. 2d 472 (1967). In reviewing the decisions of the Department of Commerce, this court has clearly stated the limits of its scope of review:

"* * * It [the court] cannot disturb the commission's determination because it does not agree with it. It can only interfere when it appears that the commission has not kept within its jurisdiction, or has proceeded upon an erroneous theory of the law, or unless its action is arbitrary and oppressive and unrea-

---

[2] It is clear that sales of the bank's stock made after approval of the application would be exempt from registration by reason of Minn. St. 1971, § 80.05, subd. 3, which provides that the registration requirements do not apply to "[a]ny security issued by and representing an interest in, or issued by and representing a direct obligation of, a state bank or trust company organized and operating under the laws of Minnesota * * *."

sonable so that it represents its will and not its judgment, or is without evidence to support it." State ex rel. Dybdal v. State Securities Commission, 145 Minn. 221, 225, 176 N. W. 759, 761 (1920).

See, also, State ex rel. Duluth Clearing House Assn. v. Department of Commerce, 245 Minn. 529, 531, 73 N. W. 2d 790, 792 (1955).

In the light of these standards we have carefully reviewed the evidence in this case and, while we believe that the propriety of granting this charter is not entirely free from doubt, we have concluded that there is sufficient evidence to justify the commission's decision. We therefore affirm. In re Application of Hodge v. Rochester Sav. & Loan Assn. 296 Minn. 226, 207 N. W. 2d 538 (1973).

Affirmed.

MR. CHIEF JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

MR. JUSTICE YETKA took no part in the consideration or decision of this case.