# FIRST NATIONAL BANK OF SHAKOPEE v. DEPARTMENT OF COMMERCE.
## WILLIAM C. NORRIS AND OTHERS, INTERVENORS.

245 N. W. 2d 861.

August 20, 1976—No. 45985.

*Albert H. Newman,* for appellant.

*Peterson, Engberg & Peterson* and *John G. Engberg,* for respondent intervenors.

Heard before Rogosheske, Peterson, and Yetka, JJ., and considered and decided by the court en banc.

YETKA, JUSTICE.

The First National Bank of Shakopee appeals from the order of the Hennepin County District Court affirming the decision of the Commerce Commission granting the application of William C. Norris, Norbert R. Berg, James Rogers Fox, M. D., and Roger A. Peterson (intervenors) for a certificate authorizing the formation of a new bank in the city of Shakopee. We affirm.

On March 2, 1973, intervenors filed an application with the Minnesota Department of Commerce for a certificate authorizing the formation of a second bank in Shakopee to be operated under the name of the Citizens State Bank of Shakopee. Their application had been preceded by another separate application of James Frady and Cletus Link who proposed to form the Western Fidelity State Bank of Shakopee (Fidelity).

Because it was intended that both banks operate in the city of Shakopee, the commission, on intervenors' motion, ordered a comparative hearing pursuant to Rule 15 of the Commerce Commission. At a comparative hearing a determination is made whether the two competing applicants intend to serve the identical trade area. The hearing was set for April 16, 1973. Notice was properly published in the Shakopee Valley News on March 14, 1973, and petitioner's notice of objection followed on March 28. The hearing was continued thereafter five times, four at the in-

stance of petitioner and another objector and once on the motion of intervenors, finally being set for October 1, 1973.

On September 18, 1973, Frady and Link withdrew their application in consideration of their becoming stockholders and directors in the Citizens State Bank. On September 7, 1973, intervenors, in a letter to the acting commissioner of banks (a copy of which was sent to petitioner), advised the commission and petitioner of the amendment of their application in the following respects: (1) The addition of Frady and Link as stockholders and directors; (2) a revision of the distribution of stock and correction of a typographical error regarding the total consideration for the stock issued; (3) a change in location of the site of the proposed bank; (4) a change in officers; and (5) an updating of the deposits and loans of banks in the Shakopee area. By letter of September 12, 1973, petitioner objected to intervenors' method of amending their application. On September 24, 1973, apparently at the instance of the commission, intervenors served and filed a formal notice of motion and motion pursuant to Dept. of Commerce Reg. 14 (COMC 14), requesting that they be permitted to amend their application as set forth above. This motion was heard October 1, 1973, immediately preceding the hearing on the application, and granted by the hearing examiner.

The commission's decision granting intervenors' application and directing the commissioner of banks of issue intervenors a certificate of authorization was entered November 13, 1974. On December 18, 1974, petitioner appealed the commission's decision to the Hennepin County District Court. The appeal was heard April 14, 1975, and the court's decision affirming the commission was filed April 29, 1975.

Petitioner challenges the decisions of the district court and the Commerce Commission on the following grounds: The proceedings below were procedurally defective; the commission's finding of a reasonable public demand for the proposed bank is unsupported by substantial evidence in view of the entire record;

and the hearing examiner improperly refused to allow petitioner's witnesses to testify.

■ Petitioner contends that the Commerce Commission permitted intervenors to amend their application in a procedurally impermissible manner. Neither the applicable statute, Minn. St. 45.04 to 45.08, or regulations *specifically* provide the procedure to be followed in order to amend an application. The commission's rule, COMC 14, governing motion practice provides that a motion shall be in writing, set forth the relief sought, and be served on all parties of record. If a hearing is granted by the commission, it is required to notify all parties of the time and place of the hearing.

Intervenors, by letter of September 7, a copy of which petitioner admits receiving, notified the commission of their intention to amend their application and detailed the substance of those amendments. Five days later petitioner objected by letter to the commission to the manner of amendment. Apparently as a result of that objection, the commission requested intervenors to file and serve a formal motion and notice of motion. This was done September 24. The amendments were again detailed, and notice was given that the motion would be heard October 1. We believe this substantially complied with COMC 14.

Petitioner suggests that a new application should have been filed, and notice of filing and hearing republished. The application is a lengthy and complicated form containing much more information than the proposed amendments cover. Absent a clear directive, it would simply be unreasonable to hold that the statutory or regulatory procedure would require duplication of this effort. Second, republishing the notice required by the commission and statute would have served no purpose. Essentially all that Minn. St. 45.04, subd. 1, and COMC 12 require is notice of the hearing on the application, which in this case had been given.

Moreover, even if we were to assume the procedure was defective, that is grounds for reversal only where "the substantial rights of the petitioners may have been prejudiced." Minn. St.

15.0425. The record indicates that petitioner was informally advised of the nature and substance of the amendments in mid-August and that it received the September 7 letter detailing the amendments. Moreover, the personal and occupational data regarding the two additional stockholders had been available to petitioner since January 29, 1973, when Fidelity's application was filed. Petitioner's claim that it did not have sufficient time to prepare to meet the substance of the amendments is not supported.

■ Minn. St. 45.04, subd. 2, provides that "[i]f, upon the hearing, it shall appear to the commission that the application should be granted, it shall, *not later than 90 days after the hearing* * * * make and file in the office of the commissioner of banks its order, in writing, directing him to issue the certificate of authorization as provided by law." The receipt of evidence was concluded October 19, 1973. At that time the parties were advised that they had the opportunity to file briefs and proposed findings. Intervenors were given 30 days from the completion of the transcript, petitioner 30 days after that, and intervenors another 10 days for a reply. The transcript was completed February 5, 1974. Intervenors' brief was filed May 31, petitioner's July 15, and intervenors' reply July 23. Neither party filed proposed findings. On August 20, the executive secretary of the Department of Commerce notified intervenors by letter of their failure to file proposed findings and requested they do so. Intervenors complied with the request November 7, and the decision and order for certificate was issued November 13. Petitioner contends that the commission's decision and order are void for failing to issue the decision in the statutorily prescribed time.

Regardless of whether the commission violated the 90-day filing requirement, its decision and order are nevertheless valid. We believe that the 90-day filing requirement is directory only, and not mandatory, and therefore its violation does not operate to invalidate the order. In Wenger v. Wenger, 200 Minn. 436, 274 N. W. 517 (1937), reaffirming our earlier decision in Vogle v.

Grace, 5 Minn. 232 (294) (1861), where we held that a similar requirement of district court judges was directory, we endorsed the "well established rule of statutory construction that statutory provisions defining the time and mode in which public officers shall discharge their duties, and which are obviously designed merely to secure order, uniformity, system, and dispatch in public business, are generally deemed directory." 200 Minn. 438, 274 N. W. 518. The decision goes on to conclude:

"While the statute is directory, it is intended that it should be obeyed and that judges should comply with it. [Citation omitted.] But if judges do not comply, parties are not to suffer by reason thereof. Therefore this statute is held to be directory as to the time within which the judge shall file his decision, and a failure to act within the time specified does not deprive the court of the power to act afterward and render a valid decision." 200 Minn. 440, 274 N. W. 519.

■ Petitioner's final assignment of procedural error is wholly without merit. It contends that the order of the district court is invalid for the reason that intervenors failed to file a note of issue or certificate of readiness prior to the April 16 hearing in the district court as required by Rules of Civil Procedure 38.03, and Rule 28 A, Special Rules of Practice, Fourth Judicial District.

While it is true that Minn. St. 15.0424, subd. 6, governing the procedure on review by the district court provides that "[e]xcept as otherwise provided all proceedings shall be conducted according to the rules of civil procedure," that phrase is necessarily subject to the further common-sense condition that the rules can be invoked only where applicable. Both of the rules cited by petitioner pertain to *trials*, as intervenors aptly point out. This proceeding was *a review* of the record upon which the commission based its decision to determine whether the record supported that decision. The district court proceeding was in no sense a de novo determination of facts.

■ Petitioner contends that intervenors failed to establish a "reasonable public demand" for their proposed bank as required by Minn. St. 45.07.[1] The commission found they had done so and were affirmed in that finding by the district court upon review. In our recent case, In re Application of Shipka, 298 Minn. 253, 256, 217 N. W. 2d 511, 513 (1974), we reiterated:

"* * * In reviewing the decisions of the Department of Commerce, this court has clearly stated the limits of its scope of review:

" '* * * It [the court] cannot disturb the commission's determination because it does not agree with it. It can only interfere when it appears that the commission has not kept within its jurisdiction, or has proceeded upon an erroneous theory of the law, or unless its action is arbitrary and oppressive and unreasonable so that it represents its will and not its judgment, or is without evidence to support it.' State ex rel. Dybdal v. State Securities Commission, 145 Minn. 221, 225, 176 N. W. 759, 761 (1920)."

See, also, Bryan v. Community State Bank of Bloomington, 285 Minn. 226, 172 N. W. 2d 771 (1969); State ex rel. Duluth Clearing House Assn. v. Dept. of Commerce, 245 Minn. 529, 73 N. W. 2d 790 (1955); and In re Application of Jackson, 277 Minn. 293, 152 N. W. 2d 472 (1967).

---

[1] Minn. St. 45.07 provides in part: "If the applicants are of good moral character and financial integrity, if there is *a reasonable public demand for this bank in this location,* if the organization expenses being paid by the subscribing shareholders do not exceed the necessary legal expenses incurred in drawing incorporation papers and the publication and the recording thereof, as required by law, if the probable volume of business in this location is sufficient to insure and maintain the solvency of the new bank and the solvency of the then existing bank or banks in the locality without endangering the safety of any bank in the locality as a place of deposit of public and private money, and if the department of commerce is satisfied that the proposed bank will be properly and safely managed, the application shall be granted otherwise it shall be denied." (Italics supplied.)

We have recognized that considerable latitude must be allowed the commission in determining whether the necessary facts exist to establish reasonable public demand. The overriding concern must be in promoting "the legitimate interest of the community as a whole in having a sound banking structure, reasonably competitive and fully adequate for the needs of the community." In re Application of Jackson, 277 Minn. 293, 295, 152 N. W. 2d 472, 474.

In the instant case we have a service area that is experiencing substantial growth in commercial and residential development and employment. The population increased considerably from 1960 to 1970 (6,919 persons to 11,188). Estimated population at the time of the hearing was 12,983. Family incomes average $12,437 per year, with 60.2 percent of families earning above $10,000. Surveys presented both by petitioner and by intervenors have indicated that a substantial segment of the population would be receptive to a second bank. The only bank located in the area, and for all practical purposes the only one reasonably convenient to the large majority of the population, is petitioner. It is financially sound and boasts by far the largest deposits of nearby banks. While it would be fair to conclude that petitioner is providing adequate service, it does not provide all services.

Petitioner's argument goes almost entirely to the weight and credibility of intervenors' experts. That, however, is a matter particularly within the province of the commission and its hearing examiner. Gibson v. Civil Service Bd. 285 Minn. 123, 126, 171 N. W. 2d 712, 714 (1969).

■ At the close of intervenors' case and the beginning of petitioner's, intervenors objected to petitioner calling any witnesses for its failure to follow the Commerce Commission's rule relating to discovery, COMC 16, which provides in pertinent part:

*"Discovery:* Identity of witnesses, production of documentary evidence and copies of working papers shall be exchanged by the parties.

"(a) The name, address and business or occupation of any

witness who may be called to testify in support of or in opposition to the application shall be made available to all parties no later than seven days prior to the hearing date. Testimony from any witness not identified in accordance with this rule shall not be received in evidence in absence of a clear showing that the offering party had good cause for his failure to supply the identity of the witness within the time prescribed by this rule."

Ultimately intervenors conceded that petitioner's expert and two of its officers could be permitted to testify. Petitioner made an offer of proof as to those witnesses he was not permitted to call, which revealed that they were all members of the Shakopee community, long active in civic and business affairs and that in their personal judgment the services of petitioner were satisfactory and they felt no need for an additional bank. It is clear from the commission's memorandum that it gave consideration to these opinions.

In Fritz v. Arnold Manufacturing Co. 305 Minn. 190, 232 N. W. 2d 782 (1975), we considered a failure to disclose a witness in pretrial answers to interrogatories pursuant to Rule 33, Rules of Civil Procedure. We restated our position that we have vested trial courts with wide discretion in not allowing undisclosed witnesses to testify. We believe that the same discretion should be accorded administrative proceedings.

There is no question that petitioner failed to follow COMC 16(a). As the commission observed, petitioner had ample time to discover these witnesses and disclose them to intervenors prior to the October 1 hearing. In fact, this could have been accomplished during the course of the hearing since petitioner did not begin its case until October 18.

Affirmed.