Marlene MEATH, Relator,

v.

**HARMFUL SUBSTANCE COMPENSATION BOARD, Respondent.**

No. C6–94–76.

Court of Appeals of Minnesota.

Aug. 2, 1994.

Review Granted Oct. 27, 1994.

Neal J. Robinson, Duane E. Arndt, Arndt & Benton, P.A., Minneapolis, for relator.

Hubert H. Humphrey, III, State Atty. Gen., Dwight S. Wagenius, Tisha R. Stumme, Sara E. Klise, Asst. Attys. Gen., St. Paul, for respondent.

Considered and decided by RANDALL, P.J., and HARTEN and SCHULTZ *, JJ.

## OPINION

HARTEN, Judge.

Relator Marlene Meath challenges the Minnesota Harmful Substance Compensation Board's decision to deny her claim for compensation for injuries from exposure to a harmful substance. We affirm.

## FACTS

On May 22, 1989, Meath was exposed to anhydrous ammonia from a tank on her neighbor's field. The tank had been left about 100 to 150 feet from Meath's house by Farmers Elevator Company. She was exposed to the ammonia, in different concentrations, for about five to six hours. A month later, Meath contacted her doctor's office about nonrespiratory matters. On two other occasions—June 29 and September 7—Meath saw her doctor for nonrespiratory ailments. On October 9, Meath mentioned to her doctor that she "has a cough once or twice at night which is annoying." The doctor's report acknowledged Meath had been exposed to ammonia.

In May 1990, Dr. Rosalind Dawson prescribed an inhaler for Meath because of "reactive airways disease, secondary to possible viral or bacterial bronchitis," and referred Meath to a specialist. Dr. James Mickman conducted additional testing in July 1990 and concluded that the relationship between her "mild hyperactive airway disease" and the single exposure to anhydrous ammonia is "unclear" but it is possible that the exposure "precipitated the airway sensitivity."

In May 1991, Meath applied to the Harmful Substance Compensation Board (board) for personal injury caused on May 22, 1989. As part of the application process, Meath was examined in January 1992 by Dr. David Bonham, an independent medical examiner, and diagnosed as probably having reactive airways dysfunction syndrome (RADS). He also concluded that her May 1989 exposure to anhydrous ammonia caused, or significantly contributed to, her condition. Later, Dr. Bonham acknowledged that Meath did not have a "textbook case" of this condition but had a medical problem similar to RADS. Dr. Paul Scanlon also conducted an examination; based on the symptoms alone, he concluded that Meath did not have RADS or an occurrence of "airway hyperresponsiveness" four years after exposure to ammonia.

The board denied Meath's request; Meath challenged the decision. After a hearing, the board issued its final decision denying her request.

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

## ISSUES

1. Does this court have jurisdiction to review the board's decision?

2. Did the board err by denying relator's claim?

## ANALYSIS

■ 1. The legislature created the Harmful Substance Compensation Board to, among other things, provide compensation for personal injury caused by exposure to harmful substances. Minn.Stat. § 115B.28, .32, .33 (1992). After investigating Meath's claim, the board denied damages and made a final decision based on the available information. *See* Minn.Stat. §§ 115B.33, subd. 1 and 115B.35, subd. 6 (1992). Meath sought certiorari review of the board's decision. The harmful substance compensation act expressly provides there is "no right to judicial review" of the board's decision. *See* Minn. Stat. § 115B.35, subd. 8 (a board's final decision is "conclusive on all matters decided").

The board claims that this court does not have jurisdiction to review its denial of Meath's application.[1] We disagree. Under the Minnesota Constitution's separation of powers clause [2], availability of judicial review of an administrative agency's quasi-judicial decision is mandated. *In re Haymes*, 444 N.W.2d 257, 258 (Minn.1989). An agency acts in a quasi-judicial manner when it hears the opposing side's views presented by written or oral testimony, reviews the record and makes findings of fact. *In re Signal Delivery Serv., Inc.*, 288 N.W.2d 707, 710 (Minn. 1980).

In this case, the board (a) accepted Meath's claim for relief for alleged personal injury; (b) conducted an investigation of the merits of Meath's claim; (c) weighed the evidence, including affidavits, doctors' opinions, medical records, medical treatises and articles; (d) denied relief based on statutory criteria under section 115B.33, subdivision 1; and (e) made findings of fact. Under these circumstances, the board's decision was quasi-judicial and *Haymes* provides Meath a right to appellate review of the board's decision.

Our decision is consistent with *Dietz v. Dodge County*, 487 N.W.2d 237, 239 (Minn. 1992) in which the supreme court stated that judicial review of an agency's quasi-judicial decision must be by writ of certiorari "in the absence of an adequate method of review or legal remedy." In this case, were this court's review foreclosed, Meath would not be entitled to any review of the board's denial of her request for damages. Moreover, while Meath may maintain a right to assert a civil claim against Farmers' Elevator Company, such relief, if available, does not provide review of the board's decision, which the separation of powers clause mandates. Accordingly, we hold that this court has jurisdiction to review the board's decision.

2. This court may reverse an administrative agency's decision if it is "unsupported by substantial evidence." *Cable Communications Bd. v. Nor–West Cable*, 356 N.W.2d 658, 668 (Minn.1984). Agency decisions are presumed correct. *City of Lake Elmo v. City of Oakdale*, 468 N.W.2d 575, 577 (Minn. App.1991). If the agency's decision is supported by substantial evidence, the reviewing court should affirm, even if the court may have reached a different decision as the factfinder. *Cable Communications*, 356 N.W.2d at 668–69.

The board must grant compensation to a claimant who demonstrates that it is more likely than not that:

(1) the claimant suffers a medically verified injury that is eligible for compensation from the account and that has resulted in a compensable loss;

---

1. On January 12, 1994, Meath filed a petition for certiorari review, but this court questioned jurisdiction. By a March 1, 1994 order, the issue of jurisdiction was referred to the panel assigned to consider the appeal on the merits.

2. The separation of powers clause provides:
   The powers of government shall be divided into three distinct departments: legislative, executive and judicial. No person or persons belonging to or constituting one of these departments shall exercise any of the powers properly belonging to either of the others except in the instances expressly provided in this constitution.
   Minn. Const. art. III, § 1.

(2) the claimant has been exposed to a harmful substance;

(3) the release of the harmful substance from a facility where the substance was placed or came to be located could reasonably have resulted in the claimant's exposure to the substance in the amount and duration experienced by the claimant; and

(4) the injury suffered by the claimant can be caused or significantly contributed to by exposure to the harmful substance in an amount and duration experienced by the claimant.

Minn.Stat. § 115B.33, subd. 1.

The first three elements were found to be satisfied; only the fourth element is at issue. Meath suffers from mild asthma, a medically verified injury, and she was exposed to anhydrous ammonia (a harmful substance), which upon release from the tank could have resulted in Meath's ammonia exposure. But the board found that Meath failed to show it more likely than not that her asthma can be caused or significantly contributed to by exposure to the anhydrous ammonia.

The record indicates: (a) Meath was exposed to anhydrous ammonia in various concentrations for about a 5 to 6 hour period on May 22, 1989; (b) the leaking tank was about 100 to 150 feet from Meath's house; (c) she experienced minor, temporary respiratory and eye irritation during the May 1989 exposure; (d) she saw physicians in June and September for nonrespiratory health problems, but did not mention exposure to the ammonia until October 1989; (e) medical records show no report of respiratory problems, other than mild coughing, until December 1989; (e) Dr. James Mickman, a pulmonary specialist, stated in his July 1990 report that the relationship between her cough and the May 1989 exposure was "unclear;" (f) Dr. David Bonham concluded that Meath had a medical problem similar to reactive airways dysfunction syndrome (RADS), which developed after the May 1989 exposure; (g) Meath had a negative methacholine challenge test in September 1991 (a positive test is clinical criterion for RADS); (h) Dr. Paul Scanlon concluded in a May 1993 report that Meath has mild asthma, but not RADS; and (i) medical literature indicates that RADS

symptoms are most severe immediately after the exposure and lessen to some extent with time.

Based on this evidence, the board found

The only mechanism by which a person can develop a chronic asthma-like syndrome from an irritant exposure described in the literature is if they have RADS. The Board has already determined that the claimant does not have RADS. There have been no published cases of RADS due to ammonia exposure. * * * The board finds that the evidence does not demonstrate that it is more likely than not that the claimant's asthma was caused or significantly contributed to by the ammonia exposure.

■ Meath first argues that the board erred by finding she did not have RADS. The board considered Meath's medical records, the doctor's opinions, Meath's and her husband's affidavits, and medical treatises and articles discussing RADS. Based on this evidence, the board believed Dr. Scanlon's conclusion that Meath did not have RADS and did not adopt Dr. Bonham's contrary opinion. There is substantial evidence to support the board finding that Meath did not have RADS. *See First Nat'l Bank v. Department of Commerce*, 310 Minn. 127, 134, 245 N.W.2d 861, 865 (Minn.1976) (credibility determinations of expert witnesses is for the factfinder).

■ Second, Meath argues that if she does not have RADS, the board erred by not finding a nexus between her anhydrous ammonia exposure and her allergic condition. We disagree. Dr. Scanlon stated that except in cases of massive exposure, anhydrous ammonia has not been reported to cause the asthma-like symptoms that Meath alleges were caused by the May 1989 exposure. Moreover, Meath had worked in a dry cleaning establishment in 1991, which may have contributed to her short-term respiratory problems. Finally, the board's determination regarding the cause of Meath's current ailments turns on its expertise and special knowledge, to which this court accords deference. *See Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 824 (Minn.1977) (reviewing court

defers to agency's expertise and special knowledge in the field of its "technical training, education and experience"). Under these facts and this court's standard of review, Meath's claim that inadequate evidence supports the board's decision is unpersuasive.

## DECISION

Meath is entitled to judicial review of the board's decision. The board's decision denying Meath's request for damages is affirmed.

**Affirmed.**