STATE of Minnesota, by David BEAULIEU, Commissioner, Department of Human Rights, Petitioner, Appellant,

v.

RSJ, INC., d/b/a Jose's American Bar & Grill, et al., Respondents.

No. C1–94–2365.

Supreme Court of Minnesota.

Aug. 29, 1996.

Erica Jocobson, St. Paul, for Appellant.

Michael J. Black, St. Paul, for Respondents.

---

1. A probable cause determination is an assessment made by the MDHR after a preliminary investigation into the facts and circumstances surrounding the alleged discrimination. Minn. Stat. § 363.06, subd. 4(1) (1994). If probable cause to credit the allegations of discrimination is found, the MDHR may, but is not required to, attempt to eliminate the alleged discrimination either through conciliation or through a contested case hearing before an ALJ. *See* Minn.Stat. §§ 363.06, subd. 4(7); 363.14, subd. 1(1) (1994).

OPINION

PAGE, Justice.

The Minnesota Department of Human Rights (MDHR) seeks review of a court of appeals decision dismissing the MDHR's complaint against RSJ, Inc. and Joseph Schaefer (Schaefer). The complaint alleges that RSJ, Inc. engaged in unlawful sex discrimination, in violation of Minn.Stat. § 363.03, subd. 1(2) (1988), and reprisal, in violation of Minn.Stat. § 363.03, subd. 7, and that Schaefer aided, abetted, compelled, or coerced RSJ, Inc.'s unfair discriminatory practices in violation of Minn.Stat. § 363.03, subd. 6.

After a hearing on the complaint, Administrative Law Judge Steve M. Mihalchick (ALJ) concluded that RSJ, Inc. had engaged in gender discrimination, in violation of Minn. Stat. § 363.03, subd. 1(2)(c), and reprisal, in violation of Minn.Stat. § 363.03, subd. 7; that Schaefer aided and abetted RSJ, Inc. in violation of Minn.Stat. § 363.03, subd. 6; that Schaefer, as the responsible corporate officer of RSJ, Inc., was personally liable for RSJ, Inc.'s discriminatory practices; and that the complainants were entitled to damages, including punitive damages, in the amount of $42,190. In addition, the ALJ awarded the MDHR attorney fees and assessed a $3,000 civil penalty against RSJ, Inc. and Schaefer.

RSJ, Inc. and Schaefer sought review, and the court of appeals, in reversing: (1) dismissed the MDHR's complaint because of the MDHR's failure to issue a probable cause determination[1] within 12 months after the charging parties' verified charges of discrimination were filed as required by Minn.Stat. § 363.06, subd. 4(1); (2) dismissed the aiding and abetting counts against Schaefer because they were not filed in a verified charge within one year after the occurrence of the dis-

If the MDHR finds that there is no probable cause to credit the allegations of discrimination, it generally takes no further action on the charge of discrimination and its decision is not appealable to the court of appeals. Minn.Stat. § 363.06, subd. 4(2). The MDHR's determination that probable cause exists to credit the allegations of discrimination is not the equivalent of an ALJ's determination that a respondent's conduct actually constitutes illegal discrimination.

criminatory practice as required by Minn. Stat. § 363.06, subd. 3; (3) held that Schaefer, as a shareholder and corporate officer of RSJ, Inc. was not individually liable for aiding and abetting RSJ, Inc.'s acts; and (4) held that the "responsible corporate officer" doctrine was not applicable because the Minnesota Human Rights Act (HRA) does not impose strict liability. *State by Beaulieu v. RSJ, Inc.*, 532 N.W.2d 610, 612–14 (Minn. App.1995).

The MDHR, in seeking our review, raises three issues: [2]

1. Whether the court of appeals erred in holding that Schaefer could not be sued because he was not named as a respondent in the charging parties' charges; and

2. Whether the court of appeals erred in holding that the 12–month period in Minn.Stat. § 363.06, subd. 4(1), requires dismissal of the complaint;

3. Whether the court of appeals erred in holding that Schaefer could not be held liable for aiding and abetting discrimination by RSJ, Inc. because he was a shareholder and officer of RSJ, Inc.

We affirm as modified.

In 1989, RSJ, Inc. operated Jose's American Bar & Grill in the Butler Square Building in Minneapolis. All of RSJ, Inc.'s shares were owned by Schaefer, his wife Linda Schaefer, and Mark Rutsick. The Schaefers owned 70% of the shares and Rutsick owned the remaining 30%. Operational decisions for RSJ, Inc. were made primarily by Schaefer. Jose's [3] offered a casual menu, a fully stocked bar, and televisions showing sporting events. Jose's employed only waitresses as food servers. The waitresses and female bartenders were required to wear a uniform consisting of a denim skirt and a white oxford shirt bearing Jose's logo. Male line employees were required to wear a uniform consisting of a shirt and long pants. Managerial employees, whether male or female, also wore shirts and long pants.

On April 28, 1989, Schaefer implemented a new uniform policy for Jose's waitresses and female bartenders. The new policy required them to wear a uniform consisting of a loose-fitting white tank top and tight-fitting orange running shorts. According to Schaefer, the new uniforms were similar to the uniforms worn by waitresses working for the "Hooters" restaurant chain. Wearing the new uniform was a "condition of working" at Jose's. The uniforms for managerial employees and the other line employees did not change at this time.

As a result of the new uniform policy, six Jose's employees filed charges of discrimination with the MDHR. Two of the charging parties settled their claims prior to this appeal. The four remaining charging parties either quit or were fired for refusing to wear the new uniform. According to the ALJ's findings, the shorts, which were provided in extra small, small, and medium sizes only, were revealing, exposing at least one waitress's "thighs, butt, and pubic hair" and "[a]nyone looking [at the tank top] would be able to see their bodies down to their waist."

Kathleen Luken filed a charge with the MDHR on July 10, 1989. By form letter addressed to "Joe Schaefer, Owner Jose's American Bar/Grill" dated July 13, 1989, the MDHR informed Jose's that Luken had filed a charge alleging that Jose's had engaged in sex discrimination in violation of Minn.Stat. § 363.03, subd. 1(2)(b) and (c). The notice letter specifically stated that the initial investigation into the charge would last four to eight weeks. A copy of Luken's charge accompanied the letter. Kelly Lowrie, Mary Pucel, and Lori Lickteig filed similar charges with the MDHR on April 23, 24, and 27, 1990, respectively. In addition to sex discrimination, Pucel's charge alleged reprisal in violation of Minn.Stat. § 363.03, subd. 7(1). Jose's received notice of Lowrie's charge by form letter dated April 25, 1990, Pucel's

---

2. The issue of whether the ALJ properly concluded that RSJ, Inc. and Schaefer engaged in discriminatory conduct has not been raised by the parties and this opinion should not be read as either agreeing or disagreeing with the ALJ's conclusions in that regard.

3. For ease of discussion, RSJ, Inc. and Jose's American Bar & Grill will hereinafter be collectively referred to as "Jose's."

charge by form letter dated May 1, 1990, and Lickteig's charge by form letter dated May 4, 1990. Like the July 13, 1989, letter which notified Jose's of Luken's charge, these notice letters specifically stated that the initial investigation would last four to eight weeks. Luken's and Lowrie's charges named "Jose's American Bar & Grill" as the respondent. Lickteig's and Pucel's charges named "Jose's American Grill" as the respondent.

More than 35 months passed between the time Luken's charge was filed and the MDHR notified Jose's that the Commissioner of the Department of Human Rights (Commissioner) had found probable cause to credit the allegations that Jose's had engaged in unlawful discrimination against Luken. Jose's received that notice by letter dated June 22, 1992. The MDHR's investigation into the Lowrie, Lickteig, and Pucel charges lasted more than 31 months. By separate letters dated November 30, 1992, the MDHR notified Jose's that the Commissioner had found probable cause to credit the allegations that Jose's had engaged in unlawful discrimination against Lowrie, Lickteig, and Pucel. None of these letters made any reference to any probable cause finding related to Schaefer.

After the MDHR made its probable cause findings, Jose's and the MDHR engaged in unsuccessful conciliation. In May 1993, the assets of Jose's were sold to BAZ, Inc. for $300,000. Approximately six months later, on November 30, 1993, the MDHR issued its complaint naming Jose's and Schaefer as respondents. On April 26, 1994, Schaefer filed for Chapter 11 bankruptcy.

On February 11, 1994, Jose's and Schaefer moved the ALJ for summary dismissal of the complaint, arguing that: (1) the MDHR failed to make a finding of probable cause within 12 months; (2) the aiding and abetting charge against Schaefer was time barred; and (3) corporate shareholders, officers, and directors cannot be held individually liable for aiding and abetting the corporation in committing a tortious act. The ALJ denied the motion, and a hearing on the complaint took place on June 27, 28, and 29, 1994. On October 24, 1994, the ALJ issued his findings of fact, conclusions of law, and order.

We first address whether that portion of the complaint charging Schaefer with aiding and abetting discrimination, in violation of Minn.Stat. § 363.03, subd. 6, should be dismissed because he was not named as a respondent in a charge as required by Minn. Stat. § 363.06, subd. 3. The MDHR argues that the failure of the charges to specifically name Schaefer as a respondent does not warrant dismissal of the aiding and abetting claim because Schaefer had notice of the charges and the opportunity to participate in conciliation. The MDHR does not explain or attempt to provide any justification for the failure to name Schaefer in a charge as required by Minn.Stat. § 363.06. The MDHR simply suggests that if we follow the lead of the federal courts in Title VII cases, the "charges were sufficient to allow the Commissioner to later issue his complaint." We disagree.

Section 363.06 provides, in relevant part:

Subdivision 1. **Actions.** Any person aggrieved by a violation of this chapter * * * may file a verified charge with the commissioner * * *. A charge filed with the commissioner must be in writing on a form provided by the commissioner and signed by the charging party. The charge must state the name of the person alleged to have committed an unfair discriminatory practice and set out a summary of the details of the practice complained of. * * *

Subd. 2. **Charge, issuance by commissioner.** Whenever the commissioner has reason to believe that a person is engaging in an unfair discriminatory practice, the commissioner may issue a charge stating in statutory language an alleged violation of a particular section of section 363.03.

Subd. 3. **Time for filing claim.** A claim of an unfair discriminatory practice must be * * * filed in a charge with the commissioner within one year after the occurrence of the practice.

Minn.Stat. § 363.06, subds. 1–3 (1994).

Section 363.06, subdivision 3, currently provides a one-year statute of limitations for filing a charge with the Commissioner. The limitations period begins to run at the

time of the discriminatory practice. *Cf. Buchholz v. Capp Homes, Inc.*, 321 N.W.2d 893 (Minn.1982) (claim under HRA must be commenced within six months after the occurrence of the discriminatory act). Here, the discriminatory act occurred on April 28, 1989, when the new uniform policy was implemented, yet no charge of discrimination was ever filed alleging that Schaefer either committed an unfair discriminatory practice or aided and abetted Jose's discriminatory practice.

■ It is only after a charge is filed and probable cause to credit the allegations of discrimination is found that the MDHR can file a complaint against a respondent. Minn. Stat. § 363.06, subds. 3 and 4(3). On the record before us, it is clear that Schaefer was not named as a respondent in any of the charges filed against Jose's, was never named in a separate charge filed either with or by the Commissioner alleging that he aided and abetted Jose's discriminatory practices, and no determination was ever made that there was probable cause to credit the allegations that Schaefer aided and abetted Jose's discriminatory practices. It is also clear that none of the charges filed were ever amended to include Schaefer as a respondent or to allege that he had aided and abetted Jose's discriminatory practices. While the record does indicate that Schaefer had notice of the four charges and was involved in the conciliation between Jose's and the MDHR, there is no indication that he was ever put on notice or had any reason to believe, prior to the complaint being issued, that he would be held personally liable for Jose's conduct or that his involvement in the conciliation was anything other than on behalf of Jose's.

This is not a case where the MDHR did not know or have reason to know, within the time period for filing a charge, of Schaefer's involvement in the uniform change. The MDHR had ample information in its possession before the limitations period expired

which put it on notice that Schaefer may have aided and abetted Jose's discrimination. The Lowrie charge alleges that Lowrie "overheard the owner Joe Schaeffer [sic], and his partner say that they were trying to sell legs and ass and what did we expect." A questionnaire filled out by Pucel at the time she filed her charge identified Schaefer as having engaged in discriminatory conduct. Yet, inexplicably, the MDHR made no attempt to file a commissioner's charge under Minn.Stat. § 363.06, subd. 2, naming Schaefer as a respondent or as having aided and abetted Jose's discriminatory practices, nor did the MDHR make any attempt to amend any of the charges to name Schaefer as a respondent or as having aided and abetted Jose's discrimination. The MDHR knew or had reason to know of Schaefer's involvement, but simply did not act.

■ According to the record, the first notice Schaefer had that he was to be held personally liable for aiding and abetting Jose's discriminatory practices came in the complaint dated November 30, 1993. The MDHR does not argue and the record does not provide any basis for equitable tolling of the one-year limitations period for filing the charge. When, as in this case, no charge has been filed by either a charging party or the Commissioner against the respondent alleging a discriminatory practice on the part of the respondent and the charges which were filed were not amended to include the respondent and no basis exists for tolling the limitations period, the claim is barred as untimely.[4]

■ Next, we address whether Jose's and Schaefer are entitled to have the complaint dismissed because the MDHR failed to make its probable cause determination within 12 months of the time the Luken, Lowrie, Lickteig, and Pucel charges were filed, as required by Minn.Stat. § 363.06, subd. 4(1).[5]

---

4. Because we conclude that the aiding and abetting claims against Schaefer are time barred, we have no need to reach and, therefore, do not decide the issue of whether the court of appeals erred in holding that Schaefer could not be held personally liable for aiding and abetting discrimination as a shareholder and officer of the corporation.

5. Minnesota Statutes section 363.06, subdivision 4(1) (1994), reads:

   Subd. 4. **Inquiry into charge.** (1) Consistent with clause (7), the commissioner shall promptly inquire into the truth of the allegations of the charge. The commissioner shall make an immediate inquiry when a charge

To resolve this issue, we must determine the meaning of the statutory phrase "the commissioner shall make a determination within 12 months after the charge was filed." Minn.Stat. § 363.06, subd. 4(1) (1994). Statutory interpretation is a question of law subject to *de novo* review. *Ed Herman & Sons v. Russell,* 535 N.W.2d 803, 806 (Minn.1995). The court's role is to discover and effectuate the legislature's intent. *Peterson v. Haule,* 304 Minn. 160, 170, 230 N.W.2d 51, 57 (1975). In doing so, we construe technical words according to their technical meaning and other words according to their common and approved usage and the rules of grammar. Minn.Stat. § 645.08 (1994). When the language of a statute, so construed, is unambiguous, we apply its plain meaning. *McCaleb v. Jackson,* 307 Minn. 15, 17 n. 2, 239 N.W.2d 187, 188 n. 2 (1976). A statute is ambiguous if it is reasonably susceptible to more than one interpretation. *Tuma v. Commissioner of Economic Sec.,* 386 N.W.2d 702, 706 (Minn.1986). If the legislature's intent is "clearly manifested by [the] plain and unambiguous language" of the statute, statutory construction is neither necessary nor permitted. *Ed Herman & Sons,* 535 N.W.2d at 806.

The MDHR argues that the word "shall" as used in the phrase "the commissioner shall make a determination within 12 months after the charge was filed" is merely directory and contends that the court of appeals misconstrued the word "shall" by concluding that it was mandatory. The MDHR cites this court's 1937 decision in *Wenger v. Wenger,* 200 Minn. 436, 274 N.W. 517 (1937), for the general proposition that when the word "shall" is used in a statute that does not provide consequences for failing to comply with its requirements, the statute is directory and not mandatory. Arguing that Minn.Stat. § 363.03, subd. 4(1), does not provide any consequences for the MDHR's failure to comply with the 12-month probable cause determination requirement, the MDHR urges us to conclude that the statute is directory and that the court of appeals' dismissal of the complaint was improper. As with the timeliness of the aiding and abetting claim against Schaefer, the MDHR does not attempt to argue that its delay in making the probable cause determinations was justified. Indeed, the record does not contain any evidence which attempts to justify, explain, or otherwise provide any reason for the MDHR's delay in making the probable cause determinations in this case. In essence, the MDHR would have us conclude that the legislature intended for the MDHR to take as long as it wanted to make probable cause determinations.

■ The MDHR's efforts to have us construe Minn.Stat. § 363.06, subd. 4(1), as directory are misguided. First, even if we were to construe the statutory language as directory, we would still have to resolve the issue of what, if any, remedy is available to the respondents. Second, and more important, when the language of a statute is clear and unambiguous, statutory construction is neither necessary nor permitted. *Ed Herman & Sons,* 535 N.W.2d at 806. In this case the legislature's intent is "clearly manifested by [the] plain and unambiguous language" of Minn.Stat. § 363.06, subd. 4(1). *Id.* Thus, we have no occasion to resort to statutory construction. The "commissioner *shall* make a [probable cause] determination

alleges actual or threatened physical violence. The commissioner shall also make an immediate inquiry when it appears that a charge is frivolous or without merit and shall dismiss those charges.

The commissioner shall give priority to investigating and processing those charges, in the order below, which the commissioner determines have the following characteristics:

(a) there is evidence of irreparable harm if immediate action is not taken;

(b) there is evidence that the respondent has intentionally engaged in a reprisal;

(c) a significant number of recent charges have been filed against the respondent;

(d) the respondent is a government entity;

(e) there is potential for broadly promoting the policies of this chapter; or

(f) the charge is supported by substantial and credible documentation, witnesses, or other evidence.

The commissioner shall inform charging parties of these priorities and shall tell each party if their charge is a priority case or not.

On other charges *the commissioner shall make a determination within 12 months after the charge was filed* as to whether or not there is probable cause to credit the allegation of unfair discriminatory practices * * *.
(Emphasis added.)

within 12 months after the charge was filed." Minn.Stat. § 363.06, subd. 4(1) (1994) (emphasis added). The word "shall" is mandatory.[6] Minn.Stat. § 645.44, subd. 16 (1994). This court is not at liberty to ignore the legislature's plain and unambiguous language.

Further, we have noted that the HRA is modeled after Title VII of the Civil Rights Act of 1964. *Danz v. Jones,* 263 N.W.2d 395, 398–99 (Minn.1978). Unlike the similar provision of Title VII as amended by 42 U.S.C. § 2000e–5(b) (1994), which provides that the EEOC "shall make its determination on reasonable cause *as promptly as possible and, so far as practicable,* not later than one hundred and twenty days from the filing of the charge" (emphasis added), Minn.Stat. § 363.06, subd. 4(1), contains language setting a strict time frame within which the MDHR must make a probable cause determination. If the legislature intended section 363.06, subd. 4(1), to provide something less than a strict time frame, it need only have used language similar to the language found in section 2000e–5b of Title VII. It did not.

The legislature's clear purpose in enacting section 363.06, subdivision 4(1), was to expedite the resolution of discrimination charges filed with the MDHR. When the MDHR's probable cause determinations are delayed, that purpose is frustrated. In addition, such delays make resolution of discrimination charges more difficult: evidence and witnesses may disappear, memories may fade, assets may be wasted, and damages may continue to accrue. If the word "shall" is merely directory and not mandatory, the MDHR's incentive to act expeditiously, as evidenced by its failure to act or justify its

failure to act in this case, is greatly diminished. The legislature's intent in enacting Minn.Stat. § 363.06, subd. 4(1), would not be served if we were to interpret the phrase "the commissioner shall make a determination within 12 months after the charge was filed" as being directory.

■ Jose's argues that the MDHR's failure to make a timely probable cause determination, coupled with the prejudice it suffered as a result, should result in the MDHR losing jurisdiction to proceed further. However, as the Supreme Court noted in *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975), "[o]n these issues of procedural regularity and prejudice, the 'broad aims of Title VII' provide no ready solution." While the Court was discussing Title VII, we see no difference in the HRA in that regard. We find nothing in the HRA which suggests that the MDHR's failure to make a timely probable cause determination is a jurisdictional bar to further proceedings. At most, the delay and any resulting prejudice raise equitable defenses to be resolved by the ALJ. *EEOC v. Johnson Co.,* 421 F.Supp. 652, 656 (D.Minn.1975). In resolving these issues, the ALJ should be mindful that the relief, if any, granted to the respondent because of the MDHR's inaction may have an impact on the charging party. Any such impact should be minimized.[7]

■ We, therefore, hold that in all cases where the MDHR fails to make a determination of probable cause within 12 months after the filing of a charge, a respondent may seek appropriate relief from the administrative law judge. The relief granted

---

6. While the MDHR argues that we should look beyond the plain and unambiguous language of the statute to our holding in *Wenger* to find the word "shall" merely directory, we find no reason to do so. In *Wenger* and its progeny, no consequences were provided for the agency or judge's failure to act. Here, however, the legislature has, by providing a remedy for the charging party, provided consequences for the MDHR's failure to act. *See* Minn.Stat. § 363.071, subd. 1a (1994) (charging party may [a]t any time after 180 days from the filing of a charge, if there has been neither a finding of probable cause nor of no probable cause, * * * file a request with the commissioner to appear at a hearing on the party's own behalf or through a private attorney).

Minn.Stat. § 363.14, subd. 1(3) (charging party may bring civil action after 45 days from filing of the charge). Thus, *Wenger* is inapplicable.

7. We also note that the charging party has the ability, and to some extent the responsibility, to do what it can to minimize the impact of the MDHR's inaction. *See* Minn.Stat. § 363.071, subd. 1a; Minn.Stat. § 363.14; *see also Hukkanen v. International Union of Operating Eng'rs,* 3 F.3d 281, 286 (8th Cir.1993) (charging party has no absolute right to wait until EEOC proceedings conclude and does have some obligation to monitor agency's progress).

by the administrative law judge should be in proportion to the prejudice suffered by the respondent and may include dismissal of the complaint. Normally, we leave the determination of prejudice and the relief to be granted to the administrative law judge; however, we conclude, as a matter of law, that probable cause determinations made 31 or more months after a charge is filed are per se prejudicial to the respondent[8] and require dismissal of the complaint.

Today's ruling that probable cause determinations made 31 months or more after a charge is filed are per se prejudicial to the respondent, requiring dismissal of the complaint, shall be applied to the parties before the court in this case and prospectively to all human rights charges filed with the MDHR on or after the date of this opinion. *See Turner v. IDS Fin. Servs., Inc.,* 471 N.W.2d 105, 108 (Minn.1991) (new rule of law generally applied to case before the court and to claims arising after the date of overruling decision).

We find the MDHR's unexplained delay in making the probable cause determination in this case troubling. The issues raised and the facts presented by Luken, Lowrie, Lickteig, and Pucel's charges are not complex and should not have required 31 or more months for a probable cause determination. Such unnecessary and unreasonable delay results in harm to charging parties and respondents alike. The MDHR would do well to heed the words of Benjamin Franklin: "If time be of all things the most precious, wasting time must be the greatest prodigality, since lost time is never found again; and what we call time enough always proves little enough. Let us then up and be doing, and doing to the purpose; so by diligence shall we do more with less perplexity."

Affirmed as modified.

COYNE, Justice (dissenting).

I dissent. When Joseph Schaefer, who, with his wife, owned 70 percent of the shares of RSJ, Inc., d/b/a Jose's American Bar & Grill, and who appears to have been the officer active in the day-to-day operation of the establishment, imposed on the female wait and bartender staff a new required uniform as a condition of continued employment at Jose's, six employees filed discrimination charges with the Minnesota Department of Human Rights. The six complainants, one male and five female, had either quit their jobs or been discharged for their opposition to the uniforms, which they considered indecently revealing. The new uniforms, which were modeled on "Hooters" waitress uniforms—an oversized tank top and undersized shorts—replaced Jose's former waitress attire of white oxford cloth shirt and denim skirt. All five of the women alleged sex discrimination in violation of Minn.Stat. § 363.03, subd. 1(2) (1988). Two of the complainants, one man and one woman, alleged reprisal in violation of Minn.Stat. § 363.03, subd. 7.

The complaints were legitimate. After a hearing an administrative law judge found that RSJ, Inc., had engaged in sex discrimination and reprisal in violation of section 363.03; that Schaefer aided and abetted the violations and was a corporate officer responsible and personally liable for RSJ's discriminatory practices. The ALJ awarded the complainants compensatory and punitive damages of $75,710. In addition, he awarded the MDHR attorney fees and assessed a civil penalty of $3,000.

It is not contended that the evidence does not support the ALJ's findings and conclusions. No one disputes that the claimants' charges were timely filed. And although Schaefer protests that the claimants did not charge him with aiding and abetting discrimination and reprisal, on at least one occasion, the MDHR's notice that a charge had been filed was directed to Joe Schaefer, Owner Jose's American Bar/Grill, so Schaefer is hardly in a position to contend that he did not understand that he was being charged as the actor. Despite the fact that the complainants met the statutory requirements for filing their claims, the fact that they proved

---

**8.** Obviously, where the respondent causes or is otherwise responsible for the MDHR's delay in making the probable cause determination, the respondent is not prejudiced by the MDHR's delay.

their claims of sex discrimination and reprisal, and the further fact that the ALJ awarded compensatory and punitive damages of $75,710, the majority construes the statutory directive to the human rights commissioner to make a probable cause determination within 12 months after a charge is filed to deprive the claimants of their remedy. That, despite the absence of any showing of prejudice to the defendants.

One hardly needs to resort to canons of construction to discern the legislative intention expressed in Minn.Stat. § 363.06, subd. 4(1) (1994): the statute plainly imposes on the commissioner of human rights the duty to make prompt inquiry into the truth of allegations of discrimination and to decide within 1 year after a charge is filed whether there is probable cause to proceed further. But although the statute imposes a duty, it is silent with respect to the effect of the commissioner's breach of duty. The statute provides neither remedy nor penalty for a failure to comply with the statutory mandate.

It may well be that the volume of charges filed pursuant to section 363.06 far outstripped legislative expectations so that the legislature simply did not consider the possibility that its apparently generous time limitation would not be met, or it may be that the legislature relied on the long-established rule that a statutory provision setting the time within which a public official is to perform a duty—a statutory provision designed to secure the efficient accomplishment of public business—is deemed directory even when couched in terms such as "shall" or "must." *Wenger v. Wenger,* 200 Minn. 436, 440, 274 N.W. 517, 519 (1937). This court has uniformly reaffirmed the principle set out in *Wenger. E.g., Benedictine Sisters Benevolent Ass'n v. Pettersen,* 299 N.W.2d 738, 740 (Minn.1980); *First Nat'l Bank v. Department of Commerce,* 310 Minn. 127, 131–32, 245 N.W.2d 861, 864 (1976).

Nevertheless, the majority has embarked on the unprecedented and hazardous mission of judicially fashioning a remedy which finds no support in either the Minnesota Human Rights Act or Minnesota case law. Ruling that the commissioner loses jurisdiction over the claim if he or she fails to meet the statutory time frame for determining whether there is probable cause to credit the allegations of unfair discriminatory practices, the majority, in one fell swoop, rewards the dilatory bureaucrat by clearing from the desk all overage complaints and releases the offender from responsibility for carrying on unfair discriminatory practices. Only the hapless victim, who has filed a verified charge in full compliance with the requirements of Minn. Stat. § 363.06 (1994), is penalized.

In any event, I think it likely that the legislature will be shocked when it learns of the intention imputed to it by the majority. The majority's remedy for bureaucratic transgression or, more accurately, inaction appears to be in direct contravention of the legislature's directive for construction of the Human Rights Act. Minn.Stat. § 363.11 (1994) provides as follows:

> The provisions of this chapter shall be construed liberally for the accomplishment of the purposes thereof. Nothing contained in this chapter shall be deemed to repeal any of the provisions of the civil rights law or of any other law of this state relating to discrimination because of race, creed, color, religion, sex, age, disability, marital status, status with regard to public assistance, national origin, sexual orientation, or familial status; but, as to acts declared unfair by section 363.03, the procedure herein provided shall, while pending, be exclusive.

Surely, the legislature could not be expected to anticipate that a rule of statutory construction considered well-established 59 years ago and uniformly followed until today would be jettisoned without warning. Equally certain is it that the legislature did not intend the Human Rights Act to become a trap for the unwary claimant and a vehicle for depriving a victim of unlawful discrimination of the right to assert a legitimate claim. Yet, that is the effect of the majority's decision, for section 363.11 provides that once the claimant files a charge with the commissioner, the procedure provided by the Human Rights Act is exclusive.

For the foregoing reasons I would reaffirm once more the principle of statutory construction articulated in *Wenger,* reverse the

court of appeals, and reinstate the ALJ's order of October 24, 1994.

KEITH, Chief Justice (dissenting).

I concur in the dissent of Justice COYNE.