Jesse MONTGOMERY, Plaintiff,

v.

INDEPENDENT SCHOOL DISTRICT NO. 709, Defendant.

No. 99–393 JRT/RLE.

United States District Court, D. Minnesota.

Aug. 23, 2000.

Kyle H. Torvinen, Hendricks, Knudson, Gee, Hayden, Torvinen & Weiby, Superior, WI, for plaintiff.

Elizabeth A. Storaasli, Boyd Agnew Dryer & Storaasli, Duluth, MN, for defendant.

## MEMORANDUM OPINION AND ORDER

TUNHEIM, District Judge.

Plaintiff Jesse Montgomery brings this action against Independent School District Number 709 (the "School District") based on its failure to prevent harassment by other students that he experienced during approximately eleven years of education in defendant's schools. Plaintiff asserts that the other students harassed him both because of his gender and his perceived sexual orientation. He brings claims under the Minnesota Human Rights Act ("MHRA"), Minn.Stat. §§ 363.01–363.20, the Equal Protection and Due Process Clauses of the United States and Minnesota Constitutions, and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 ("Title IX").[1] This matter is before the Court on defendant's motion for judgment on the pleadings against plaintiff's claims under the United States Constitution and Title IX, and a portion of his claim under the MHRA. This matter is also before the Court on defendant's motion for summary judgment against all claims and on plaintiff's motion for summary judgment in his favor on the issue of liability in connection with his MHRA, Title IX, due process and equal protection claims.[2]

---

1. Plaintiff also plead conspiracy claims against the School District under 42 U.S.C. § 1985 and 42 U.S.C. § 1986, and asserted a claim for punitive damages. At oral argument on the parties' motions plaintiff voluntarily withdrew these claims. The Court accordingly dismisses them without prejudice.

2. Plaintiff has also moved for permission to file memoranda in excess of the thirty-five

## BACKGROUND

Plaintiff attended three of defendant's schools from kindergarten through the tenth grade, including Lakewood Elementary School, Ordean Middle School, and East High School. Plaintiff alleges, and defendant does not dispute, that while he was a student in defendant's schools he experienced frequent and continual teasing by other students beginning in kindergarten and recurring on an almost daily basis until the end of the tenth grade, when he transferred to another school district. While some of these taunts were more general in nature, many of them appear to have been directed at plaintiff because of his perceived sexual orientation, including, "faggott," "fag," "gay," "Jessica," "girl," "princess," "fairy," "homo," "freak," "lesbian," "femme boy," "gay boy," "bitch," "queer," "pansy," and "queen." A review of plaintiff's allegations, assuming them to be true for purposes of these motions, reveals that the verbal abuse to which his peers subjected him was severe and unrelenting throughout his entire tenure in defendant's school system.

According to plaintiff, the students' misconduct escalated to the point of physical violence beginning in the sixth grade, when several students punched him, kicked him, and knocked him down on the playground.[3] Another student later superglued him to his seat. Plaintiff claims that as he entered middle school and progressed on to high school, the harassment became noticeably worse. While the verbal taunts continued unabated, the physical threats and assaults intensified. Students threatened to beat him up on several occasions. A group of students pushed him down in the hallway in front of his family when they were at the school to attend a choir concert. Another student unzipped his backpack, threw his books to the floor and smashed his calculator. Plaintiff also states that during a gym exercise one of the students charged him and sent him flying several feet through the air, and that during hockey drills the offending students deliberately tripped him or knocked him down on several occasions, causing bruises. Plaintiff further alleges that students frequently kicked or tripped him on the school bus, and that while he was riding the bus or in art class students would throw objects at him such as crayons, paper, popcorn, water, chunks of clay, paint brushes, pencils, pen caps, trash, and other small things.

In addition to these incidents, plaintiff claims that on some occasions the physical threats and assaults he experienced were of a more sexual nature.[4] He specifically contends that a student in his middle school choir class grabbed his legs, inner thighs, chest and crotch. He states that the same student grabbed his buttocks on at least five or six occasions. Later another student approached him and asked to see him naked after gym class. Plaintiff states that he experienced similar incidents when he was in high school. According to plaintiff, students in his ninth and tenth grade choir classes sometimes put their arms around him or grabbed his inner thighs and buttocks while calling him names targeted at his perceived sexual orientation. Plaintiff states that one of the students grabbed his own genitals while squeezing plaintiff's buttocks, and on other occasions would stand behind plaintiff and grind his penis into plaintiff's backside. The same student once threw him to the ground and pretended to rape him anally, and on another occasion sat on plaintiff's

---

page limit set forth under Rule 7.1(c) of the Local Rules for the District of Minnesota. Because the parties have raised a significant number of complex issues, and because plaintiff's memoranda address three separate dispositive motions, the Court grants this motion and considers the lengthy memoranda that plaintiff has filed in their entirety.

3. Although some of the students who subjected plaintiff to verbal insults were female, the students who allegedly harassed him physically were all male.

4. The students who directed these sexual behaviors towards plaintiff were all male.

lap and bounced while pretending to have intercourse with him. Other students watched and laughed during these incidents.

Plaintiff alleges that the harassment he experienced deprived him of the ability to access significant portions of the educational environment. During his tenure in defendant's schools, plaintiff generally achieved average to above average grades. Nonetheless, plaintiff states that he stayed home from school on approximately five or six occasions while he was in middle school in order to avoid the harassment. He further states that he did not participate or try to participate in intramural sports because his harassers were participants, that he avoided going to the school cafeteria unless absolutely necessary, and that he avoided using the school bathroom except in emergency situations. When plaintiff was in high school he stopped using the school bus in order to circumvent the continuous harassment he experienced there, requiring his parents and other family members to drive him to school.[5]

Plaintiff states that he reported the students' misconduct to a variety of School District officials, including teachers, bus drivers, principals, assistant principals, playground and cafeteria monitors, locker room attendants, and school counselors. Plaintiff further states that on several occasions when he was in middle school, he and his parents reported the incidents of misconduct to the office of the School District's superintendent.

The officials to whom plaintiff reported the misconduct responded with a variety of measures. Defendant gave plaintiff access to school counselors, and he made appointments with them on a regular basis. Moreover, when plaintiff was in middle school defendant required him to attend a number of group sessions with other boys to discuss strategies for responding to harassment. According to plaintiff, defendant removed him from some of his favorite classes and required him to attend these sessions involuntarily.

Defendant also implemented several disciplinary measures against the offending students, although it appears that School District officials applied such discipline inconsistently. Plaintiff's teachers responded to many of his complaints by verbally reprimanding students or sending them to the principal's office. When students harassed plaintiff on the school bus, the driver sometimes stopped the bus and reprimanded the students. Defendant asserts that it assigned special seats to students on the bus at least temporarily in an attempt to circumvent the misconduct, although plaintiff claims that these seating assignments were not adequately enforced. On some occasions the cafeteria monitor responded to plaintiff's lunchtime complaints by requiring the offending students to stand in a designated area. On two occasions plaintiff's middle school counselor and principal required the offending students to meet with plaintiff and apologize to him. Plaintiff asserts that these sessions were unhelpful and ultimately resulted in a significant amount of retaliatory harassment.

In connection with the incidents of sexual touching he experienced, plaintiff alleges that he made multiple complaints to his choir teacher about the student who re-

---

**5.** According to plaintiff, one of the bus drivers may have deliberately facilitated the harassment he experienced. Two busses usually followed each other on the route that plaintiff took home from school. He alleges that after the first bus driver dropped him off, the second bus driver would pull into the intersection and deliberately pause so that the students on the bus could open their windows and yell insults at him as he walked towards his house. Plaintiff states that this behavior occurred for a period of several weeks. When plaintiff's father learned about these incidents he reported them to the bus driver's supervisor, and plaintiff's parents thereafter began driving him to school. It is unclear whether plaintiff ever complained about the bus driver to the principal or other managerial School District officials, and he has not asserted any independent claims against the School District based on the bus driver's alleged conduct.

peatedly grabbed his thigh, buttocks, and crotch and pretended to have intercourse with him. The teacher responded to plaintiff's complaints by verbally reprimanding the student, sending him out into the hallway, or sending him to the principal's office. There is no evidence in the record as to whether or how School District officials ultimately disciplined this student once he arrived in the principal's office.

With the exception of one occasion, defendant has not shown that any of the students whom teachers sent to the principal's office in response to plaintiff's reports ever received discipline stronger than a verbal reprimand. The disciplinary measures that defendant took on that occasion were precipitated by a formal complaint that plaintiff's mother filed with the School District in March 1995. At that time plaintiff had been experiencing almost daily harassment on the school bus and in his art class by a particular group of students who called him names, kicked him, or threw objects at him. The principal eventually referred plaintiff's complaint to Terri Kronzer ("Kronzer") with the School District's Human Resources Department. Kronzer conducted an investigation and determined that plaintiff had been sexually harassed. Based on her recommendations, defendant suspended one of the harassers for five days and another for one day. Other harassers received lectures on the School District's sexual harassment policy. Defendant also revoked the bus privileges of two of the students, who were brothers, and transferred the most egregious offender out of plaintiff's art class. Defendant further instructed the hall monitor to "keep an eye" on plaintiff.

Within one week after defendant implemented these measures, the students whose bus privileges had been revoked returned to the school bus. According to defendant, the students lived in a rural area, and their father complained to the principal that driving them to school each day would be a significant hardship. Defendant states that it permitted the students to return to the school bus on the condition that they sit directly behind the bus driver each day.

Plaintiff thereafter ceased riding the school bus altogether in order to avoid his harassers, but did not notify defendant that he had done so. Plaintiff and his parents were unhappy with defendant's decision to permit the students to ride the bus again. Plaintiff's mother thereafter filed charges against the School District with the Minnesota Department of Human Rights ("MDHR") based upon its allegedly inadequate response to plaintiff's formal harassment complaint, and this lawsuit followed from those charges. Eventually, after plaintiff finished the tenth grade, he transferred to another school district altogether for his last two years of secondary education.

## ANALYSIS

### I. Motion for Judgment on the Pleadings

#### A. Standard of Review

■ Defendant moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure in connection with several of plaintiff's claims. In reviewing such a motion, a court must accept as true all facts alleged by the non-moving party in its pleadings and grant all reasonable inferences arising therefrom in that party's favor. *See, e.g., Lion Oil Co. v. Tosco Corp.,* 90 F.3d 268, 270 (8th Cir.1996). Judgment on the pleadings is not appropriate unless the moving party clearly establishes that there are no material issues of fact remaining to be resolved and that it is entitled to judgment as a matter of law. *See id.* Moreover, a court should not dismiss the complaint on such a motion "unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *St. Paul Ramsey County Med. Ctr. v. Pennington County,* 857 F.2d 1185, 1187 (8th Cir.1988).

■ When considering a motion for judgment on the pleadings a court must generally ignore all materials outside the pleadings unless they are matters of public record, attached to the pleadings, or part of the record of the case. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir.1999). The Court applies this standard in evaluating the legal arguments that defendant raises in connection with this motion, and accordingly evaluates defendant's motion based on the facts alleged in the pleadings alone.

**B. MHRA claims prior to August 1, 1993**

■ Defendant seeks dismissal of that portion of plaintiff's MHRA claims arising from incidents that occurred prior to August 1, 1993. Prior to that date, the MHRA explicitly prohibited only discrimination "because of race, color, creed, religion, national origin, sex, age, marital status, [or] status with regard to public assistance or disability." Minn.Stat. § 363.03, subd. 5(1) (1993). On August 1, 1993, however, the Minnesota legislature amended the MHRA to include "sexual orientation" as a prohibited basis for discrimination. 1993 Minn. Laws, ch. 22 §§ 8–25; *see also* Minn.Stat. § 363.03, subd. 5(1) (2000). This amendment was not retroactive, defendant argues, and therefore, the MHRA did not prohibit discrimination based on sexual orientation or perceived sexual orientation until August 1993. Because the students who harassed plaintiff primarily targeted him due to his perceived sexual orientation, defendant concludes that he states no claim for relief under the MHRA based on conduct that occurred prior to the effective date of the amendment.

The Court agrees that the MHRA did not prohibit discrimination based on sexual orientation prior to August 1, 1993. Pursuant to section 645.21 of the Minnesota Statutes, "[n]o law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature." The stat-utory language manifests no such intent, and plaintiff points to no legislative history indicating otherwise. Thus, to the extent that plaintiff asserts claims based on discrimination due to his perceived sexual orientation prior to August 1, 1993, such claims are not cognizable under the MHRA.

Nevertheless, in asserting this argument defendant too narrowly construes the scope of plaintiff's claims against it. Not only does he assert claims based on discrimination due to his perceived sexual orientation, but also due to his gender. Although the MHRA did not prohibit sexual orientation discrimination prior to 1993, it did prohibit discrimination based on sex. The MHRA defined such discrimination to include "sexual harassment." Minn.Stat. § 363.01, subd. 14 (1993). Moreover, it expressly included within the definition of sexual harassment any "unwelcome sexual advances, requests for sexual favors, sexually motivated physical contact or other verbal or physical conduct or communication of sexual nature when * * * that conduct or communication has the purpose or effect of substantially interfering with an individual's . . . education."

In *Cummings v. Koehnen*, 568 N.W.2d 418 (Minn.1997), the Minnesota Supreme Court interpreted these provisions and held that an MHRA claimant alleging same sex sexual harassment is not required to prove that the alleged harassment affected one gender differently than the other or that the harasser is homosexual. In reaching this decision, the court expressly rejected the defendant's argument that no sexual harassment had occurred because the alleged harasser, a heterosexual, was not motivated by any actual sexual interest in the claimant. *See id.* at 423. Importantly, although *Cummings* was decided after the 1993 amendment to the MHRA was enacted, the court did not rely on the prohibition against sexual orientation discrimination as a basis for its decision. *See id.* at 421–24. Rather, the court looked to the plain meaning of the statutory definition of "sexual harassment" and found that it contains no requirement

that the prohibited conduct be motivated by sexual interest, but rather, prohibits any "verbal or physical conduct of a sexual nature" if it is otherwise sufficiently severe to constitute actionable harassment. *See id.*[6] Thus, under *Cummings,* the sexual orientation and motivation of the alleged harasser are not dispositive of whether an actionable claim under the MHRA exists.

Applying *Cummings* to the case at bar, the Court finds that plaintiff has plead student misconduct occurring prior to August 1, 1993 that falls within the statutory definition of sexual harassment. Plaintiff not only asserts that the students called him derogatory sexual names such as "faggot" and "queer," but also that students approached him and asked to see him naked.[7] Under *Cummings,* it matters not whether the students who engaged in this conduct were motivated by sexual interest in plaintiff or instead by a desire to humiliate him. Rather, the Court must consider only whether they fall within list of specific behaviors included under the MHRA's broad definition of sexual harassment. The statements directed at plaintiff might properly be categorized as requests for sexual favors or verbal conduct of a sexual nature, and therefore, support a claim of discrimination based on sex. Defendant's motion for judgment on the pleadings against the portion of plaintiff's MHRA claim arising prior to August 1, 1993 is denied for these reasons.

## C. Due process and equal protection claims

■ Defendant argues that plaintiff's due process and equal protection claims must be dismissed on the ground that persons with a particular sexual orientation or perceived sexual orientation do not constitute a definable, constitutionally protected class. In support of this argument, defendant contends that plaintiff's equal protection and due process claims must be evaluated under the standards applicable to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e–17. Defendant further contends that no cause of action exists under Title VII for harassment based on sexual orientation, and on that basis concludes that the United States Constitution similarly provides no protection, under any circumstances, for persons treated differently on the basis of sexual orientation.

In so arguing, defendant fundamentally misapplies the most basic principles of constitutional law. Although Title VII explicitly limits its scope to persons subjected to discrimination based on "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e–2, the Fourteenth Amendment contains no such limiting language. *See* U.S. Const. amend. XIV, § 1 ("nor shall any State deprive *any person* of life, liberty, or property, without due process of law; nor deny to *any person* within its jurisdiction the equal protection of the laws") (emphasis added). Thus, the Fourteenth Amendment protects all persons, whether they can prove membership in a specially protected class or not.

■ The Court does not, in so holding, suggest that membership in a particular

---

6. The *Cummings* court expressly distinguished the MHRA from federal discrimination statutes on the ground that it contains this definition.

7. Plaintiff further alleges that a student in his middle school choir class grabbed his legs, inner thighs, chest, crotch and buttocks. Because he did not plead these allegations in his complaint, the Court does not consider them in connection with defendant's motion for judgment on the pleadings. Nevertheless, they are relevant to defendant's motion for summary judgment on the sufficiency of the evidence. The Court notes that these allegations are strikingly similar to those asserted in *Cummings.* In that case, the claimant alleged that the harasser called him "derogatory sexual names, including 'fat faggot'," that he "routinely placed his hands on [the claimant's] hips, simulating anal sex," and that he "would pinch him on the buttocks or on the inside of his legs and would place tools and a garden hose up against [the claimant's] crotch and genitals." *See id.* at 420.

class of persons is irrelevant to a determination of whether a constitutional violation has occurred. Courts must evaluate discrimination based on membership in an identified suspect class such as race, alienage, or national origin, with the most strict scrutiny. *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (holding that such classifications are permissible only when "suitably tailored to serve a compelling state interest"). In contrast, the Eighth Circuit has held that discrimination based on homosexuality is subject only to rational basis review. *See Richenberg v. Perry*, 97 F.3d 256, 260–61 (8th Cir.1996) (stating that under rational basis review, a claimant has the burden to demonstrate that the challenged government conduct is "not rationally related to any legitimate government purpose"). Nevertheless, a claimant's failure to prove membership in a suspect class does not automatically deprive him of any cognizable constitutional claim as defendant suggests, but instead merely lowers the standard under which the conduct at issue must be scrutinized. *See City of Cleburne*, 473 U.S. at 446, 105 S.Ct. 3249 (holding that a court's refusal to recognize a group of individuals as a suspect class "does not leave them entirely unprotected from invidious discrimination").

In *Romer v. Evans*, 517 U.S. 620, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996), the Supreme Court applied this principle to individuals classified on the basis of sexual orientation. The legislation challenged in that case prohibited any legislative, executive, or judicial act in the State of Colorado designed to protect individuals based on their homosexual or bisexual orientation. Striking down the legislation as violating the Equal Protection Clause, the Court held that even if it did not target a suspect class it nevertheless failed even the most permissive rational basis review. The Court's findings in *Romer* foreclose defen-

dant's argument that individuals are entitled to no constitutional protection whatsoever from discrimination based on sexual orientation.

Moreover, in a case that is strikingly similar to the case at bar, the Seventh Circuit held under rational basis review that a school district's failure to protect a student from peer harassment based on sexual orientation was constitutionally impermissible. *See Nabozny v. Podlesny*, 92 F.3d 446, 458 (7th Cir.1996). In so holding, the court reasoned, "We are unable to garner any rational basis for permitting one student to assault another based on the victim's sexual orientation, and the defendants do not offer us one." *Id.* The Court agrees with the *Nabozny* court's analysis. Assuming the allegations set forth in the pleadings to be true, defendant has responded to plaintiff's complaints differently than to those of other students because of his sexual orientation or perceived sexual orientation. The School District offers no rational basis for permitting students to assault plaintiff on the basis of his sexual orientation while protecting other students from similar forms of harassment. Moreover, the Court can conceive of no legitimate government interest for doing so. Defendant's motion for judgment on the pleadings against plaintiff's due process and equal protection claims on the ground that he is not a member of a protected class is denied accordingly.[8]

### D. Title IX claims

■ Defendant also argues that plaintiff's Title IX claims must be dismissed because Title IX does not protect individuals from discrimination based on sexual orientation or perceived sexual orientation. Title IX provides in relevant part that "[n]o person in the United States shall, *on the basis of sex,* be excluded from participation in, be denied the benefits of, or be subjected to discrimination under" federally-funded educational pro-

---

8. The Court raises and considers defendant's remaining arguments for dismissing these claims below in connection with its motion for summary judgment.

grams or activities. 20 U.S.C. § 1681(a) (emphasis added). Thus, unlike the Fourteenth Amendment, Title IX prohibits only discrimination based on sex and does not extend to any other form of invidious discrimination. For these reasons the Court concludes that, to the extent that plaintiff asserts Title IX claims based on discrimination due to his sexual orientation or perceived sexual orientation, these claims are not actionable and must be dismissed. *Cf. Williamson v. A.G. Edwards & Sons, Inc.*, 876 F.2d 69, 70 (8th Cir. 1989) (holding that Title VII does not protect employees from harassment based on sexual orientation).

■ Plaintiff nevertheless contends that he has been a victim of harassment based upon sex or gender as well as harassment based upon his sexual orientation or perceived sexual orientation. In *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 631, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999), the Supreme Court recognized that student-against-student sexual harassment may give rise to a cognizable claim under Title IX in appropriate circumstances. No federal court appears to have addressed, however, whether the kind of conduct to which plaintiff was subjected constitutes discrimination "on the basis of sex" within the meaning of Title IX.[9] In contrast with the claims recognized as viable in *Davis*, this case primarily involves same-sex harassment by students who, through name-calling and other forms of verbal abuse, repeatedly indicated that they perceived plaintiff to be homosexual. Thus, plaintiff's harassers do not appear to have been motivated by any sexual desire towards plaintiff, but rather, by hostility based upon his perceived sexual orientation.

Plaintiff contends that the students engaged in the offensive conduct at issue not only because they believed him to be gay, but also because he did not meet their stereotyped expectations of masculinity. The facts alleged in plaintiff's complaint support this characterization of the students' misconduct. He specifically alleges that some of the students called him "Jessica," a girl's name, indicating a belief that he exhibited feminine characteristics. Moreover, the Court finds important the fact that plaintiff's peers began harassing him as early as kindergarten. It is highly unlikely that at that tender age plaintiff would have developed any solidified sexual preference, or for that matter, that he even understood what it meant to be "homosexual" or "heterosexual."[10] The likelihood that he openly identified himself as gay or that he engaged in any homosexual conduct at that age is quite low. It is much more plausible that the students began tormenting him based on feminine personality traits that he exhibited and the perception that he did not engage in behaviors befitting a boy. Plaintiff thus appears to plead facts that would support a claim of harassment based on the perception that he did not fit his peers' stereotypes of masculinity.

Whether such harassment is actionable under federal law has been the subject of significant controversy among federal courts. Although no court has addressed this issue in the context of a Title IX claim, several courts have considered whether same-sex harassment targeting the claimant's failure to meet expected gender stereotypes is actionable under Title VII. The Court looks to these precedents in analyzing plaintiff's Title IX claim, noting that Title VII similarly requires that the discrimination resulting in the plaintiff's

---

**9.** Unlike the MHRA, Title IX contains no provision specifically defining sexual harassment in terms of the behaviors that it encompasses. Because the MHRA is in this way distinguishable from Title IX, the Court's holding that plaintiff states a cognizable sexual harassment claim under the MHRA does not govern its

determination of the Title IX issue that defendant raises.

**10.** Indeed, as of the date of his deposition in this matter, plaintiff testified that he was still confused about his sexual orientation.

claims be based on his or her sex. *See, e.g., Schmedding v. Tnemec Co.,* 187 F.3d 862, 864 (8th Cir.1999). Moreover, the Supreme Court relied upon Title VII precedents in first recognizing a private cause of action for sexual harassment under Title IX. *See Franklin v. Gwinnett County Pub. Sch.,* 503 U.S. 60, 74, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992) (citing *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). In *Davis,* 526 U.S. at 643, 119 S.Ct. 1661, the Supreme Court clearly distinguished Title IX from Title VII in connection with the use of agency principles and the requisites for institutional liability under each statute. Nevertheless, the same opinion cited Title VII precedents in connection with the issue of what constitutes gender-oriented harassment. *See id.* at 631, 119 S.Ct. 1661 (citing *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)). Furthermore, no logical rationale appears to exist for distinguishing Title VII and Title IX in connection with the issue raised here regarding the circumstances under which abusive or offensive conduct amounts to harassment "based on sex." The Court accordingly applies Title VII precedents in analyzing plaintiff's Title IX claim.

In *Oncale,* the Supreme Court recognized for the first time that claims based on same-sex harassment are cognizable under Title VII. 523 U.S. at 79, 118 S.Ct. 998; *see also Quick v. Donaldson Co.,* 90 F.3d 1372, 1379 (8th Cir.1996). The Court emphasized, however, that in order to prevail on such a claim, an employee must be able to prove that he or she was harassed "because of ... sex." *Id.* at 81, 118 S.Ct. 998. The Court further suggested that a claimant could satisfy this requirement by demonstrating that the challenged conduct was motivated by sexual desire, that he or she was harassed in such sex-specific terms as to raise an inference of hostility towards his or her sex, or that employees of one sex were treated less favorably than those of the other sex. *See id.* Regardless of the kinds of proof offered, the decisive issue in any sexual harassment claim is "whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id.* at 80.

The Court in *Oncale* did not specifically reach the issue of whether employees may prove harassment "because of sex" by demonstrating that the challenged conduct was motivated by a failure to meet expected gender stereotypes. Nevertheless, a number of federal courts have suggested that they can. *See Higgins v. New Balance Athletic Shoe, Inc.,* 194 F.3d 252, 261 n. 4 (1st Cir.1999); *Doe v. City of Belleville,* 119 F.3d 563 (7th Cir.1997), *vacated, City of Belleview v. Doe,* 523 U.S. 1001, 118 S.Ct. 1183, 140 L.Ed.2d 313 (1998) (remanding the matter for further consideration in light of *Oncale* ); *Carrasco v. Lenox Hill Hosp.,* 2000 WL 520640, *8 (S.D.N.Y. April 28, 2000) (finding that comments suggesting the plaintiff to be homosexual might be "because of sex" because they "focused on the sexual conduct of plaintiff as a man"); *Samborski v. West Valley Nuclear Svcs., Co.,* 1999 WL 1293351, *4 (W.D.N.Y. Nov.24, 1999). In evaluating the issue, the *Higgins* court rejected the lower court's contrary suggestion, stating:

> We think it prudent to note that the precise question that the district court posed is no longer open: *Oncale* ... confirms that the standards of liability under Title VII, as they have been refined and explained over time, apply to same-sex plaintiffs just as they do to opposite-sex plaintiffs. In other words, just a woman can ground an action on a claim that men discriminated against her because she did not meet stereotyped expectations of femininity, ... a man can ground a claim on evidence that other men discriminated against him because he did not meet stereotyped expectations of masculinity.

*See Higgins,* 194 F.3d at 261 n. 4 (internal citations omitted). Importantly, the *Higgins* court cited *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), for the proposition that discrimination based on a failure to meet stereotyped gender expectations is actionable under Title VII. In *Price Waterhouse,* the Supreme Court upheld a Title VII claim raised by an employee who asserted that sex stereotyping played a role in her employer's decision not to promote her. In so doing, the Court explicitly addressed the legal relevance of sex stereotypes, holding that "we are beyond the day when an employer could evaluate employees by assuming or insisting that they matched the stereotype associated with their group, for '[i]n forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes.'" 490 U.S. at 251, 109 S.Ct. 1775 (quoting *Los Angeles Dept. of Water & Power v. Manhart,* 435 U.S. 702, 707, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978)) (alteration in the original). Thus, the *Higgins* opinion reminds courts that the Supreme Court has already determined that discrimination based on a claimant's failure to satisfy the stereotypes associated with his or her sex constitutes discrimination "because of sex" within the meaning of Title VII. Under *Oncale* the principles established in *Price Waterhouse* apply with equal force when the individual engaging in discriminatory conduct is of the same sex as the claimant.

A few federal courts have reached decisions that are at odds with the reasoning articulated in *Higgins.* *See Klein v. McGowan,* 36 F.Supp.2d 885, 889–90 (D.Minn.1999), *aff'd on other grounds, Klein v. McGowan,* 198 F.3d 705 (8th Cir. 1999); *Bibby v. Philadelphia Coca Cola Bottling Co.,* 85 F.Supp.2d 509, 517 (E.D.Pa.2000); *Dandan v. Radisson Hotel Lisle,* 2000 WL 336528, * 4 (N.D.Ill. March 28, 2000). Nevertheless, in finding that Title VII offers no protection to individuals suffering discrimination based on sex stereotypes, both *Klein,* 36 F.Supp.2d at 890, and *Bibby,* 85 F.Supp.2d at 517, cite to the reasoning articulated by the lower court in the *Higgins* case which the First Circuit later rejected as erroneous under *Oncale.* *See Higgins v. New Balance Athletic Shoe, Inc.,* 21 F.Supp.2d 66, 75–76 (D.Maine 1998), *vacated on other grounds, Higgins,* 194 F.3d at 265. Moreover, the *Dandan* court failed to acknowledge the precedential relevance of *Price Waterhouse* and simply held that the claimant had failed to direct the court's attention to any support for the argument that Title VII protection includes harassment based on sexual stereotyping. The Court finds the rationale articulated by the First Circuit in *Higgins* to be much more persuasive, and accordingly rejects the contrary decisions of these other federal courts. The Court for these reasons concludes that by pleading facts from which a reasonable fact-finder could infer that he suffered harassment due to his failure to meet masculine stereotypes, plaintiff has stated a cognizable claim under Title IX.

The Court's determination on this issue is buttressed by the Eighth Circuit's recent decision in *Schmedding,* 187 F.3d at 865. The misconduct alleged in *Schmedding* is strikingly similar to that plead in this case. In that case the claimant alleged that his co-workers taunted him about being a homosexual and spread rumors about his perceived sexual orientation, as well as subjecting him to other offensive harassment such as patting him on the buttocks, asking him to perform sexual acts, and forcing him to observe offensive exhibitions of sexually inappropriate behavior. *See id.* Although these acts are indicative of harassment based upon sexual orientation or perceived sexual orientation, the court held them sufficient to support a Title VII claim.[11] In

11. The court opined, "We do not think that, simply because some of the harassment al-

this case, plaintiff alleges that his harassers called him names targeted at homosexuals and spread rumors about his sexual orientation, as well as subjecting him to more severe forms of misconduct such as asking him for sexual favors, grabbing his buttocks and inner thighs, and subjecting him to acts of pretended anal rape. The Court finds these alleged acts to be at least as indicative of harassment based on sex as those asserted in *Schmedding*. The Court accordingly denies defendant's motion for judgment on the pleadings against plaintiff's Title IX claim.

## II. The Parties' Motions for Summary Judgment

### A. Standard of Review

Defendant has also moved for summary judgment against all claims, and plaintiff has countered with his own motion for partial summary judgment. Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is not appropriate if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.* Summary judgment is mandated when, after adequate time for discovery and upon motion, the nonmoving

party fails to make a showing sufficient to establish the existence of an element essential to its case, on which that party would bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

On a motion for summary judgment the nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *See Vette Co. v. Aetna Casualty & Surety Co.,* 612 F.2d 1076, 1077 (8th Cir.1980). The nonmoving party may not merely rest upon allegations or denials in its pleadings, however, but must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. *See Burst v. Adolph Coors Co.,* 650 F.2d 930, 932 (8th Cir.1981). Applying these standards to the case at bar, the Court views the supported facts in the light most favorable to plaintiff when evaluating defendant's motion, but takes the opposite approach when evaluating plaintiff's motion.

### B. MHRA Claim

■ Defendant argues in support of its summary judgment motion that plaintiff has failed to establish a prima facie case of discrimination under the MHRA. The MHRA prohibits discrimination in access to education based on a variety of enumerated characteristics including sex and sexual orientation. *See* Minn.Stat. § 363.03, subd. 5. Sexual harassment constitutes a form of prohibited discrimination under this provision only when it "has the purpose or effect of substantially interfering with an individual's ... education ... or creating an intimidating ... educational ... environment." Minn.Stat. § 363.01, subd. 41.

---

leged by Schmedding includes taunts of being homosexual or other epithets connoting homosexuality, the complaint is thereby transformed from one alleging harassment based on sex to one alleging harassment based on sexual orientation." *Schmedding,* 187 F.3d at 865. In the case at bar, plaintiff alleges

harassment based both on sex and perceived sexual orientation. For the above reasons, plaintiff's Title IX claim for sexual orientation harassment must be dismissed. Nevertheless, *Schmedding* would appear to dictate that plaintiff's sexual harassment claim should be permitted to proceed.

Defendant argues that plaintiff has failed to meet this standard. It points to plaintiff's numerous allegations of name-calling, teasing, pencil-throwing, and playground fights from kindergarten through the tenth grade, and contends that none of these actions are sufficiently severe to give rise to a cognizable MHRA claim. The Court agrees with that assessment, finding it highly unlikely that the Minnesota Legislature intended to create a cause of action at law for every child who is teased, pushed or taunted by other children in school. Children are, by their nature, prone to engage in immature, mischievous, and sometimes mean behavior towards each other. While this is unfortunate for those children who get bullied, courts must be cognizant of the reality that this kind of behavior occurs on a frequent basis and is part of the maturation process. A student simply cannot sue his school district on the ground that he had a disagreeable childhood.

Nevertheless, plaintiff's allegations include conduct that is much more egregious than the ordinary childish behavior among school children that, although reprehensible, might be construed to be normal. Plaintiff contends that some of his peers approached him and requested sexual favors from him, including asking to see him naked. Even more disturbing, however, are plaintiff's allegations that some of his peers grabbed his inner thighs, chest, crotch and buttocks during class, that one student on several occasions stood behind plaintiff and pressed his genitals into plaintiff's backside, and that the same student repeatedly initiated physical contact with plaintiff while pretending to have involuntary sex with him. These explicitly sexual acts directed at plaintiff constitute more than ordinary juvenile bullying, and are sufficiently severe, when viewed in totality with his allegations of extraordinarily frequent and pervasive verbal abuse, to create an "intimidating, hostile, or offensive" educational environment within the meaning of the MHRA. Minn.Stat. § 363.01, subd. 41.

Defendant nonetheless contends that the conduct plaintiff alleges does not give rise to an actionable claim because he has failed to demonstrate that the harassment plaintiff experienced had "the purpose or effect of substantially interfering with" his education. The Court disagrees. Plaintiff has alleged that throughout high school and most of his junior high school years he was afraid to use the school's restroom, and avoided eating in the cafeteria, riding the school bus, or participating in intramural sports. Ultimately he felt he could no longer tolerate the circumstances that he was in and transferred to an entirely different school district. Although plaintiff's grades remained relatively average throughout his tenure in defendant's schools, grades are not the sole benefit to be derived by a student from an educational experience. The Court finds that the activities from which plaintiff allegedly was excluded due to his fear of harassment are important benefits of the educational environment. Plaintiff therefore has alleged facts that support a finding that the peer harassment he experienced had the effect of substantially interfering with his education.

Defendant further contends that plaintiff has failed to allege sufficient culpability on its part in order to hold it accountable for the student misconduct alleged. In order to state a viable claim of sexual harassment under the MHRA in the employment context, a claimant must prove that "the employer knows or should know of the existence of the harassment and fails to take timely and appropriate action." *Id.* The MHRA contains no similar provision defining the scope of liability of school districts in the education context. Plaintiff contends that the actual or constructive knowledge standard applicable under the MHRA in the employment context also should apply in the context of peer sexual harassment in schools. Defendant disagrees, arguing that the more restrictive liability standards applicable under federal

Title IX law should apply to such claims. *See Davis*, 526 U.S. at 633, 119 S.Ct. 1661 (holding that school districts are liable for peer sexual harassment in their schools under Title IX only if they have actual knowledge of the harassment and act with deliberate indifference in response to it). No Minnesota court appears to have addressed this issue, and therefore, the scope of school district liability for peer sexual harassment under the MHRA appears to be an open question. The Court need not resolve this issue, however, because it holds that even under the more rigorous "actual knowledge plus deliberate indifference" test, plaintiff's allegations are sufficient to create a genuine fact issue as to whether the School District should be held accountable on his MHRA claims.

Defendant's actual knowledge of the harassment plaintiff allegedly experienced cannot be seriously disputed on this record. Plaintiff asserts that he made hundreds of complaints about the harassment to school teachers, cafeteria and playground monitors, bus drivers, principals, assistant principals, locker room attendants, counselors, and even the superintendent. Moreover, the record reflects that these officials did little more than verbally reprimand the offending students or send them into the hallway until plaintiff filed a formal complaint about the misconduct when he was in the tenth grade.[12] Although the School District did suspend several of the students in response to plaintiff's formal complaint, this single response must be considered in light of plaintiff's allegations of more than ten years of constant harassment and reports

to School District officials of such harassment. The Court notes that, in particular, defendant has produced no evidence of any discipline taken in response to plaintiff's complaints about the student who repeatedly grabbed his body parts, rubbed up against him, and pretended to have sex with him. Although it appears that on some occasions plaintiff's choir teacher verbally reprimanded this student or sent him to the principal's office, there is absolutely no evidence that the principal or any other School District official took concrete disciplinary action against him. The Court finds this evidence sufficient to raise a fact question as to whether the School District responded to plaintiff's complaints of harassment with deliberate indifference. Plaintiff has therefore established sufficient evidence of the School District's knowledge and failure to respond to state an MHRA claim even under the more rigorous liability standards articulated in federal Title IX cases. The Court accordingly denies defendant's motion for summary judgment against this claim.

The Court further concludes, however, that whether defendant's responses to plaintiff's complaints were appropriate and whether the alleged harassment created a hostile environment or substantially interfered with plaintiff's education cannot be determined as a matter of law on this record. Rather, these issues are best left for a jury to decide. For this reason, the Court also denies plaintiff's motion for summary judgment in its favor on this claim.

---

12. Defendant makes much of the fact that although plaintiff was aware of its sexual harassment policy, he did not file a formal complaint about the harassment until his last year in defendant's schools. Nevertheless, according to the express language of that policy, formal complaints are not required. The policy provides, "The School District will act to investigate all complaints, either formal or informal, verbal or written, of ... sexual harassment or violence, and to discipline or take appropriate action against any pupil ... who is found to have violated this policy."

The policy further provides, in connection with reporting procedures, that although the School District encourages written complaints, "oral reports shall be considered complaints as well." Finally, the policy requires all School District personnel receiving reports of sexual harassment to inform the building principal, who is required to reduce any verbal report into writing within the next twenty-four hours, and then to forward it to the School District's Administrator of Certified Personnel.

## C. Due Process Claims

 Defendant contends that plaintiff's due process claims against it must be dismissed on the ground that it has no constitutional duty to protect students from the acts of third parties.[13] In *DeShaney v. Winnebago County Dept. of Soc. Servs.*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), the Supreme Court established that a state's failure to protect an individual from private actors does not give rise to a constitutional violation unless a special relationship between the state and the claimant exists that creates a constitutional duty to protect. Addressing the due process claims raised in *DeShaney*, the Court argued that the Due Process Clause is merely a limitation on government action, and that neither its text nor history imposes upon the government an affirmative duty to act. *See id.* at 196–97, 109 S.Ct. 998. Relying on *DeShaney*, the Eighth Circuit held in *Dorothy J. v. Little Rock Sch. Dist.*, 7 F.3d 729 (8th Cir.1993), that a student's claim against a school district based on sexual assault by another student is not actionable under section 1983. The court rejected the claimant's argument that the school district's custodial relationship with him gave rise to a constitutional duty to protect him. *See id.* at 732 (holding that, "[a] constitutional duty of care arises only 'when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs.'" (citing *DeShaney*, 489 U.S. at 200, 109 S.Ct. 998)).

Although *Dorothy J.* appears to foreclose his claims, plaintiff argues that it is not applicable to this case, because the School District enacted policies pursuant to which he was required to report sexual harassment to School District officials and rely upon their assistance. He contends that these policies chilled any independent action on his part and prevented him from protecting himself, giving rise to a duty on the part of the School District to do so. The Court finds that this argument lacks merit. Plaintiff engages in hyperbole in arguing that the School District's reporting policies so restrained his liberty as to render him "unable to care for himself." Moreover, *Dorothy J.* specifically addressed the issue that plaintiff now raises, holding that "[t]he affirmative duty to protect arises not from the State's knowledge of the individual's predicament *or from its expressions of intent to help him.*" *Id.* at 732 (emphasis added). Thus, the School District's representations that it would respond to students' sexual harassment reports did not give rise to a constitutional duty to protect him. *Dorothy J.* is for these reasons dispositive of plaintiff's due process claims. The Court accordingly dismisses these claims and denies plaintiff's summary judgment motion in connection with them.

## D. Equal Protection Claims

 In *Morlock v. West Cent. Educ. Dist.*, 46 F.Supp.2d 892, 918 (D.Minn.1999), this Court held that the rationale articulated in *DeShaney* and *Dorothy J.* applies with equal force to equal protection claims, and therefore, school districts do not have a constitutional duty under the Equal Protection Clause to prevent student-against-student harassment motivated by the victim's class status. Thus, to the extent that plaintiff predicates his equal protection claims on the alleged misconduct of the students, these claims are not cognizable and must be dismissed.

 Nevertheless, the case at bar is distinguishable from the claims asserted in *Morlock*, because in that case the claimant offered no evidence of disparate treatment in connection with the student harassment

---

**13.** Neither party has attempted to distinguish plaintiff's rights under the United States Constitution from his rights under the Minnesota Constitution. For this reason, the Court assumes, without deciding, that they are the same and accordingly analyzes plaintiff's claims under the state and federal constitutions together.

that arose from the school district's own conduct. In contrast, plaintiff alleges in this case that the School District discriminated against him on the basis of sex and sexual orientation by responding to his complaints differently than to those made by similarly situated female students and male students harassed by female students. As the Court noted in *Morlock*, although the Equal Protection Clause does not ordinarily impose upon government entities an affirmative duty to protect, it does limit the government's authority to deny protective services on the basis of an individual's disfavored class status. *See id.* at 918; *see also Ricketts v. City of Columbia*, 36 F.3d 775, 779 (8th Cir.1994) ("A municipality is not constitutionally required 'to protect an individual against private violence,' but a municipality may not operate under a custom in which it 'selectively den[ies] its protective services to certain disfavored minorities without violating the Equal Protection Clause.'") (internal citations omitted) (alteration in the original). Thus, to the extent that plaintiff seeks to hold the School District liable for its own discriminatory conduct, his equal protection claims are actionable.

In order to establish a viable claim against the School District under the Equal Protection Clause, as enforced through 42 U.S.C. § 1983, plaintiff must demonstrate that it either had a policy or custom of responding to sexual harassment complaints more favorably when lodged by similarly situated female students or students perceived to be heterosexual. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (holding that government entities are subject to suit under section 1983 when the alleged unconstitutional conduct results from an official government policy or from practices of government officials that are so well-settled as to constitute a "custom or usage" with the force of law).

Defendant challenges the sufficiency of plaintiff's evidence on this issue.

 Upon reviewing the parties' submissions, the Court finds that a fact issue exists as to whether School District officials had a custom or practice of treating similarly situated students differently. Plaintiff has offered into evidence a variety of formal sexual harassment complaints filed by students at Ordean Middle School, along with associated letters and other documents evidencing the School District's response to the complaints. These records show that on several occasions, when girls filed sexual harassment complaints based on name-calling or inappropriate touching, the School District responded more strongly than it did to plaintiff's complaints.[14] The School District's responses appear to range, depending on severity and the number of reported offenses against a particular student, from verbal reprimands along with mandatory group counseling to revocation of bus privileges and in-school and out-of-school suspensions. In each case, no matter how small the offense, the School District notified the alleged harasser's parents about the complaint, any disciplinary action taken, and its intent to refer any future complaints to the City of Duluth Police Department. With the exception of the School District's response to the complaint plaintiff filed when he was in the tenth grade, there is absolutely no evidence in this case that it ever responded to his complaints by notifying the offending students' parents or threatening to notify the police about any future misconduct.

Defendant contends that these students were not similarly situated with plaintiff because all of them filed formal complaints, whereas plaintiff failed to do so until he was in the tenth grade. Whether this fact materially differentiates plaintiff from the other students is impossible to assess on the present record. As noted *supra*, the School District's own harass-

---

**14.** Only one of the formal complaints submitted was filed by a boy, who complained about opposite-sex harassment by a girl who had already filed harassment charges against him.

ment policy did not require students to file written complaints in order to instigate an investigation and disciplinary response. Rather, the policy required any adult School District employee who received a verbal complaint to report it to the building principal, who was required to reduce the complaint to writing within twenty-four hours and then forward it to the School District's Administrator of Certified Personnel. According to the policy, the principal could request, but not require, that any complaint be stated in writing. Plaintiff contends that despite the existence of this policy, and despite the fact that he complained many times about the harassment directly to the middle school principal, he was never encouraged to state his claims in writing and no written complaint was ever forwarded to the Administrator of Certified Personnel. In contrast, at least a few of the formal complaints submitted by other students were lodged by School District officials, including the principal and one of the bus drivers, on behalf of the student victims. These facts raise the possibility that the School District responded to plaintiff's numerous verbal complaints differently than it did to those of other students by failing to document them or to encourage him to do so. Thus, in light of the harassment policy, the existence of the written formal complaints filed by the other students itself raises an inference of disparate treatment.

The Court finds for these reasons that a genuine fact question exists as to whether the other students whose complaints were treated more seriously were similarly situated with plaintiff. Moreover, because the great majority of these students were girls, and all of them complained about opposite-sex rather than same-sex harassment or harassment based on sexual orientation, a reasonable inference of disparate treatment because of plaintiff's sex or sexual orientation arises. Furthermore, plaintiff has testified that he complained about the alleged harassment on numerous occasions to a wide variety of different School District officials. These facts support a finding that the School District had an established custom or practice of responding to his complaints differently than it did to those of girls or of boys complaining about opposite-sex harassment. Defendant's summary judgment motion against plaintiff's equal protection claim is denied for these reasons. As noted *supra*, however, there are significant fact issues involved in determining whether plaintiff was similarly situated with the other students who lodged complaints. For this reason, plaintiff's motion for summary judgment on this claim must also be denied.

### E. Title IX Claim

 Defendant further challenges plaintiff's Title IX claim on grounds of insufficient evidence. Defendant argues that the conduct upon which plaintiff bases his claim is not gender-oriented. For the reasons set forth above in connection with defendant's motion to dismiss this claim on the pleadings, the Court disagrees. Defendant further argues that the alleged harassment is not sufficiently severe and pervasive to state a claim under Title IX, that it did not result in a denial of any educational opportunity, and that there is insufficient evidence of deliberate indifference to permit plaintiff's claims to proceed. For the reasons articulated in connection with defendant's summary judgment motion against plaintiff's MHRA claim, the Court also finds these arguments unpersuasive.[15]

---

**15.** In so holding, the Court does not intend to imply that the MHRA and Title IX are identical. Nevertheless, for purposes of analyzing the parties' motions, the Court evaluated plaintiff's MHRA claim under the Title IX deliberate indifference standard. Moreover Title IX is similar to the MHRA in requiring a sexual harassment claimant to show that the alleged harassment was so severe as to have the effect of denying him access to some educational benefit or opportunity. *See Davis,* 526 U.S. at 633, 119 S.Ct. 1661. Furthermore, while ordinary teasing is insufficiently severe to state a claim under either statute,

In challenging plaintiff's Title IX claim, defendant also contends that under the Supreme Court's decision in *Gebser v. Lago Vista Ind. Sch. Dist.*, 524 U.S. 274, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998), plaintiff failed to notify the appropriate authorities about the alleged harassment. *Gebser* involved a claim of sexual misconduct against a student by a teacher. *See id.* In that case, the Court held that the school district did not have actual notice of the misconduct when the only official who knew about it was the offending teacher himself. *See id.* at 291, 118 S.Ct. 1989. The Court further held that in order to state a claim for damages under Title IX, a student must be able to prove that an official with sufficient authority to address the alleged harassment and to take corrective measures on the student's behalf has actual knowledge of it. *See id.* at 290, 118 S.Ct. 1989.

Defendant argues that under these holdings, a Title IX claimant may never prevail unless a principal or higher official has actual knowledge of the alleged discrimination. Defendant contends that knowledge by a teacher is therefore insufficient. This argument fails for two reasons. First, plaintiff plainly alleges that he did inform the principals in his schools about the student misconduct, and furthermore, that on at least one occasion he informed the office of the School District's superintendent. Moreover, defendant stretches the Supreme Court's holdings in *Gebser* beyond recognition in arguing that actual knowledge by a teacher is always insufficient. In this case, unlike *Gebser*, the alleged harassers were students and not teachers. Because teachers ordinarily maintain at least some level of disciplinary control over their students, it is reasonable to infer that they had authority to take disciplinary action and to institute other corrective measures to end the harassment. Indeed, the School District's sexual harassment policy

imposes upon teachers a duty to convey reports of sexual harassment to the school principals. It is therefore clear that teachers had the authority to take at least this minimal corrective measure which, if effectively carried out, would impart knowledge of the harassment to higher School District officials with even greater authority to act.

Defendant also challenges plaintiff's Title IX claim on the ground that he has failed make any showing of damages as a result of the harassment he experienced. Defendant cites *Price v. City of Charlotte*, 93 F.3d 1241, 1250 (4th Cir.1996), and *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 939 (5th Cir.1996), for the proposition that plaintiff's claim must be dismissed on this ground. Upon reviewing these authorities the Court finds that they do not support defendant's position. Rather, these cases stand for the proposition that in section 1983 cases, a plaintiff claiming emotional distress who fails to produce actual proof of injury is entitled to no more than nominal damages. *See Price*, 93 F.3d at 1250. They do not hold, as plaintiff suggests, that a failure to prove actual damages at the summary judgment stage constitutes grounds for dismissal on the issue of liability.

Finally, defendant challenges plaintiff's cause of action under Title IX on the ground that, as plead in his complaint, he bases this particular claim only on sexual harassment by female students. Defendant notes that plaintiff's evidence of such harassment is quite sparse. The Court agrees with defendant's characterization of the evidence. Nevertheless, when asked about the peculiar limitation on plaintiff's Title IX claim to harassment by only female students, plaintiff's counsel acknowledged that this was a mistake and stated that the focus of plaintiff's claim has always been on harassment by both male and female students. Counsel further sug-

---

the kind of sexually-oriented physical touching that plaintiff experienced is. *See Davis*, 526 U.S. at 653, 119 S.Ct. 1661 (holding that the lower court erred in dismissing the claim-

ant's Title IX complaint when she alleged not only verbal harassment, but also repeated acts of objectively offensive touching).

gested that plaintiff would be amenable to amending his complaint in order to correct this error.

Ordinarily the Court does not permit parties to amend their pleadings at this late stage in the process. Nevertheless, it does appear that defendant had ample notice of plaintiff's intent to litigate this matter on the basis of harassment by students of both sexes. Moreover, the parties conducted extensive discovery pertaining to plaintiff's allegations of harassment by male students in conjunction with his other claims. Permitting plaintiff to amend the complaint thus would not result in a need for further discovery. Although defendant argues that it would be prejudiced by an amendment to the pleadings at this point in time, it fails to articulate how such prejudice might arise. For these reasons, the Court concludes that plaintiff should be permitted to amend his complaint for the limited purposes of broadening his Title IX claim to include harassment by male as well as female students.

For all of these reasons, the Court denies defendant's summary judgment motion against plaintiff's Title IX claim. Nevertheless, because there are genuine factual issues remaining, the Court also denies plaintiff's cross-motion for summary judgment on this claim.

### F. Procedural Issues

■ Defendant also asserts a variety of arguments for dismissing plaintiff's claims based on the timing of this lawsuit and the scope of the charges that he filed with the Minnesota Department of Human Rights. First, defendant asserts that plaintiff has failed to exhaust his administrative remedies. Defendant points to the official charge of discrimination filed with the MDHR by plaintiff's mother, and notes that it only contains allegations pertaining to harassment against plaintiff occurring in 1995 during his art class and on the school bus. According to defendant, plaintiff's failure to assert his other allegations in this charge bars the Court from considering them. Nevertheless, defendant points to no legislative or judicial authority for the proposition that a claimant must file formal charges with the MDHR in order to exhaust administrative remedies under the MHRA, Title IX, or section 1983. Rather, defendant cites only to cases governing claims under Title VII. *See Shannon v. Ford Motor Co.,* 72 F.3d 678, 684 (8th Cir.1996); *Williams v. Little Rock Mun. Water Works,* 21 F.3d 218, 222 (8th Cir. 1994). Unlike the statutes under which plaintiff currently sues, Title VII sets forth an explicit administrative exhaustion requirement that is "central to [its] statutory scheme." *See Williams,* 21 F.3d at 222. The complex administrative structure upon which Title VII is built distinguishes it from other statutes, and therefore, the authorities to which defendant cites are not applicable. *See* Minn.Stat. § 363.14 (permitting parties to file MHRA claims directly in district court without first filing charges with the MDHR).

Moreover, even if exhaustion of administrative remedies is a prerequisite to suit under the statutes at issue, plaintiff offers evidence demonstrating that he has met this requirement. Although the one-page charge filed by plaintiff's mother with the MDHR describes only conduct occurring in 1995, this document constitutes only a limited portion of plaintiff's administrative file. In plaintiff's discrimination questionnaire filed with the MDHR, and in a responsive letter to the administrative enforcement officer, his mother described in much greater detail the incidents of harassment to which he was subjected throughout high school, middle school, and elementary school. Thus, in arguing that plaintiff's MDHR charges only included harassment during 1995 defendant ignores important parts of the administrative record.

■ Defendant further contends that plaintiff's claims must be dismissed because he has failed to meet the notice requirements set forth at section 466.05 of the Minnesota Statutes. Section 466.05

requires any individual seeking damages from a municipality in the State of Minnesota to provide notice of his or her loss or injury within 180 days of its occurrence. Defendant notes that plaintiff failed to notify the school board of the majority of the alleged misconduct upon which he basis his claims. Although section 466.05 would appear on its face to bar plaintiff's claims, the Minnesota Supreme Court has made clear that it only applies to state law claims sounding in tort. *See Nadeau v. Ramsey County*, 310 Minn. 549, 245 N.W.2d 254, 256 (1976); *cf. Felder v. Casey*, 487 U.S. 131, 134, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988) (finding Wisconsin's similar notice-of-claim statute preempted by federal law in connection with civil rights claims). Plaintiff's claims in this case are not tort claims, but rather arise under various federal and state statutes and constitutions. The Court rejects defendant's argument for this reason.

■ Next, defendant points out that in evaluating plaintiff's charges, the MDHR failed to makes its probable cause determination within the one-year deadline established under the MHRA. *See* Minn.Stat. § 363.06, subd. 4(1). In *Beaulieu v. RSJ, Inc.*, 552 N.W.2d 695, 702–03 (Minn.1996), the Minnesota Supreme Court held that whenever the MDHR exceeds its statutory deadline, a respondent may seek relief from the administrative law judge presiding over the case. The *Beaulieu* court nevertheless explained that the form of relief granted need not always include dismissal of the complaint, but rather, must be proportionate to the prejudice suffered by the respondent. *See id.*

In this case, the MDHR made its probable cause determination only twelve days beyond the statutory deadline and defendant has submitted no evidence whatsoever of prejudice resulting from that brief delay. In contrast, the probable cause determination at issue in *Beaulieu* was over thirty-one months late. *See id.* at 703. Moreover, *Beaulieu* involved a charge prosecuted administratively by the MDHR itself rather than a claim filed in court by an individual plaintiff. While the MDHR had some control over its own failure to make a timely determination, plaintiff is not responsible for the MDHR's delay in this case. *Beaulieu* is for these reasons distinguishable from the case at bar. Having found no evidence of prejudice to defendant because of the MDHR's failure to make a timely determination, the Court rejects defendant's argument for dismissal on that ground.

■ Finally, defendant argues weakly in one of its footnotes that consideration of plaintiff's allegations arising from conduct that occurred during elementary and middle school is barred under the one-year limitations provision set forth under the MHRA. *See* Minn.Stat. § 363.03, subd. 3. Nevertheless, Minnesota courts recognize that the "continuing violation" doctrine applies to claims under the MHRA. *See Sigurdson v. Isanti County*, 448 N.W.2d 62, 68 (Minn.1989); *Breitenfeldt v. Long Prairie Packing Co.*, 48 F.Supp.2d 1170, 1175 (D.Minn.1999). Under this doctrine, a claimant may bring charges based on acts occurring outside the statute of limitations period if the conduct is related to acts occurring within the limitations period. *See Breitenfeldt*, 48 F.Supp.2d at 1175 (holding in the discrimination context that "[a] plaintiff may challenge incidents which occurred outside the statute of limitations period if the various acts of discrimination constitute a continuing pattern of discrimination").

■ In the case at bar, plaintiff filed his charges with the MDHR in September 1995 based on conduct that occurred the previous April. Defendant does not dispute that this conduct falls within the limitations period of the MHRA. Moreover, plaintiff alleges that he was subjected to a continuing pattern of harassment by his peers occurring over a period of years on a monthly, weekly, and even daily basis. The Court finds sufficient evidence in the record of such a pattern to conclude that

the incidents were all related, and that they must be considered in combination in evaluating the hostile educational environment to which he claims he was subjected. The Court accordingly rejects defendant's argument for dismissal of plaintiff's MHRA allegations on statute of limitations grounds.

### ORDER

Based on the foregoing, and all of the records, files and proceedings herein, **IT IS HEREBY ORDERED that:**

1. Plaintiff's motion for leave to file memoranda in excess of 35 pages [Docket No. 49] is **GRANTED.**

2. Defendant's motion for judgment on the pleadings [Docket No. 54] is **DENIED.**

3. Defendant's motion for summary judgment [Docket No. 51] is **GRANTED in part** and **DENIED in part.**

4. Plaintiff's due process claims (Counts Four and Five) are **DISMISSED, with prejudice.**

5. Plaintiff's conspiracy claims (Counts Six and Seven), and plaintiff's claim for punitive damages are **DISMISSED, without prejudice,** as withdrawn.

6. Plaintiff shall have fourteen (14) days from the date of this Order in which to amend his complaint for the limited purpose of asserting a claim under Title IX based on harassment by male students as well as female students. If plaintiff fails to amend his complaint within the prescribed time period, his Title IX claim will be dismissed, with prejudice.

7. Defendant's motion for summary judgment is **DENIED** in all other respects.

8. Plaintiff's motion for summary judgment [Docket No. 58] is **DENIED.**